**GRENDEL'S DEN, INC.**

v.

**Herbert N. GOODWIN et al.**

**Civ. A. No. 77–3418–T.**

United States District Court,
D. Massachusetts.

Aug. 14, 1980.

Rosenberg, Baker & Fine, David Rosenberg, Cambridge, Mass., Lawrence H. Tribe, Cambridge, Mass., for plaintiff.

Gerald Caruso, Thomas Miller, John E. Bowman, Jr., Asst. Attys. Gen., Boston, Mass., for defendants.

Michael C. Costello, David B. O'Connor, Legal Counsel, Cambridge, Mass., for Cambridge License Commission and Davenport and Cremins.

## OPINION

TAURO, District Judge.

The plaintiff, Grendel's Den, Inc. (Grendel's), is a Harvard Square area restaurant that has, since 1977, unsuccessfully sought issuance of a liquor license by the defendant Cambridge License Commission (the CLC). The CLC denial was upheld on appeal by the Commonwealth's Alcoholic Beverages Control Commission (the ABCC). It is undisputed that both the local and state authorities have refused to grant Grendel's request solely because of the opposition filed by the Holy Cross Armenian Catholic Parish Church (the Church) under the provisions of Mass.Gen.Laws ch. 138, § 16C. That statute states in pertinent part:

> Premises, except those of an innholder and except such parts of buildings as are located ten or more floors above street level, located within a radius of five hundred feet of a church or school shall not be licensed [for sale of alcoholic beverages] if the governing body of such church or school files written objection thereto
> . . . .

"Church" is defined as a "building dedicated to divine worship and in regular use for that purpose." It is undisputed that the Church meets the definition.

Grendel's asserts that § 16C violates the federal constitution in three ways. It first alleges a due process violation by the legislature's delegation to private persons of the power to veto issuance of a liquor license.[1] As a spinoff of that theory, Grendel's next argues that vesting the right of veto in the Church violates the separation of religious and political power mandated by the Estab-

---

1. U.S.Const. Amend. XIV, sec. 1.

lishment Clause.[2] Third, Grendel's contends that the legislative classifications embodied in § 16C are irrational and, therefore, do not afford equal protection of the law.[3] An additional claim by Grendel's is that § 16C violates federal antitrust law by creating a licensing system that permits private parties to engage in anticompetitive practices.[4]

The parties suspended action in this case for two years pending resolution of a state court challenge to the same statute by another liquor license applicant. In *Arno v. Alcoholic Beverages Control Comm'n,* — Mass. —, 384 N.E.2d 1223 (1979), the Supreme Judicial Court upheld the validity of § 16C over arguments that it violates both state and federal constitutional provisions.

With the state law issues thus settled,[5] the parties here filed cross-motions for summary judgment with respect to these four facial attacks on the validity of § 16C under federal law.[6] The parties have asked this court, in the interest of expediting this litigation, to rule now on these federal issues, before taking evidence on Grendel's "as applied" arguments. They have also requested that this court certify its decision on those issues for interlocutory appeal under 28 U.S.C. § 1292(b).

To prepare an adequate basis for prompt decision, the parties have submitted an agreed statement of facts and an agreed statement of contested issues. There being no factual disputes material to the issues presented, and with state law decided, the cross motions for summary judgment with respect to these federal issues are ripe for decision.

## I.

Grendel's is a restaurant located in the Harvard Square area of Cambridge, Massachusetts. The Church is situated approximately ten feet from Grendel's. There are now twenty-six liquor licenses outstanding for premises within the statutory 500 feet of the Church.

Pursuant to a purchase agreement with a license holder, Grendel's filed for a transfer of that license to itself with the CLC. After the required notice was issued, the Church filed a written objection pursuant to § 16C. The CLC rejected that objection as not properly indicating due authorization from the Church's governing body. The Church then filed a second opposition on May 25, 1977. The CLC thereupon rejected Grendel's application in a letter dated May 31, 1977. The only basis for the CLC's decision cited in that letter was the filing of a proper objection by the Church.

Grendel's then appealed to the ABCC, the state agency charged with enforcing the Commonwealth's liquor regulations. After a hearing, the ABCC on September 8, 1977, upheld the CLC's denial of Grendel's application expressly on the basis of the Church's objection, which the ABCC in that decision characterized as "an absolute veto." Statement of Agreed Facts, Exhibit E.

## II.

■ It is well established that a state, acting under the powers granted by the Twenty-first Amendment, may constitutionally ban the sale of liquor within a specified radius of a church. *See, Arno, supra,* 384 N.E.2d at 1226 (citations); *California v. LaRue,* 409 U.S. 109, 120, 93 S.Ct.

---

**2.** U.S.Const. Amend. I ("Congress shall make no law respecting an establishment of religion . . . ."). It has long been held that the Establishment clause is applicable to the states under the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

**3.** U.S.Const. Amend. XIV, sec. 1.

**4.** 15 U.S.C. §§ 1, 2, 15.

**5.** The Supreme Judicial Court's rulings in *Arno, supra,* and *Samel v. City of Pittsfield Licensing Board,* — Mass. —, 384 N.E.2d 1230 (Mass. 1979), have conclusively resolved issues of state law relevant to this case.

**6.** With respect to the antitrust theory, the parties have asked at this point only for a ruling as to the availability of a state exemption defense under *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1942).

390, 398, 34 L.Ed.2d 342 (1972) (Stewart, J., concurring) (dicta). Such a ban, properly enacted by the legislature, raises none of the issues advanced by Grendel's in its attack on the operation of § 16C.

■ On the other hand, the state's powers under the Twenty-first Amendment do not abrogate other constitutional guarantees. *See, California Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.,* 445 U.S. 97, 108, 100 S.Ct. 937, 945, 63 L.Ed.2d 233 (1980); *see also* P. Brest, *Processes of Constitutional Decisionmaking, Cases and Materials,* 258 (1975), *cited with approval* in *Craig v. Boren,* 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976). The Supreme Court has noted that "[o]nce passing beyond consideration of the Commerce Clause, the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful." *Craig, supra,* at 206, 97 S.Ct. at 461. Indeed, in *Craig* the Court struck down on equal protection grounds a state statute setting different ages at which males and females could drink beer.[7]

■ It is clear, therefore, that a state's right to regulate liquor sales is not absolute. Regulations promulgated under the umbrella of the Twenty-first Amendment are subject to the same standards of scrutiny developed to evaluate the constitutionality of other kinds of state action. Within this framework, the court now examines plaintiff's various theories for relief.

A. *Due Process.*

The plaintiff's principal due process argument rests on three Supreme Court decisions defining the kind of power legislatures may delegate to private entities.

In *Eubank v. Richmond,* 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912), the Court voided an ordinance which gave the power to establish building setback lines to the owners of two-thirds of the property abutting any street. In *Cusack Co. v. Chicago,* 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917), the Court upheld a municipal restriction banning billboard construction unless the owners of a majority of the affected property waived the restriction. The triad was completed by *Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928), in which the Court struck down an ordinance permitting the establishment of homes for the elderly only on the written consent of the owners of two-thirds of the property located within 400 feet of the proposed site.

■ As the Supreme Judicial Court observed in *Arno,* the teaching of these cases is that a legislature may not delegate the power to *impose* a restriction. *Arno, supra,* 384 N.E.2d at 1227 (citing cases). The principle embodied by this rule is that legislative power may only be exercised by the legislative body, though in specific instances affected parties may be authorized to waive an otherwise applicable legislative restriction. *Cusack, supra,* 242 U.S. at 531, 37 S.Ct. at 192; *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 677–78 & n. 12, 96 S.Ct. 2358, 2363–64 & n. 12, 49 L.Ed.2d 132 (1976). Given this standard, therefore, the test of a statute is whether it incorporates a legislative policy subject to *waiver* or whether it actually licenses private persons to *impose* policy on the public.

Section 16C, as presently enacted, is the third approach adopted by the Massachusetts legislature to regulate liquor outlets located near a church or school. As originally enacted in 1954, § 16C flatly forbade the licensing of liquor outlets within 500 feet of a church or school. In 1968, the legislature amended § 16C to permit licenses within the 500 foot radius, provided "the governing body of such church or school assents in writing." The statute was then amended to its present form in 1970. *Arno, supra,* 384 N.E.2d at 1226–27.

The 1954 version of § 16C was a constitutional exercise of the Commonwealth's power to regulate alcohol in its promulgation of

---

**7.** *See also, Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 178–79, 92 S.Ct. 1965, 1974, 32 L.Ed.2d 627 (1972) (state liquor regulation cannot invidiously discriminate in violation of equal protection).

an absolute ban. Similarly, the 1968 version comported with the *Cusack* standard as the legislature there provided a clear statement of policy, but permitted individual churches and schools to exercise their discretion to waive the legislative ban on liquor outlets near them.

The present § 16C, however, presents a quite different picture. There is now no general legislative proscription on liquor licenses within 500 feet of a church or school. The statute on its face reflects legislative neutrality concerning the proximity of liquor outlets to churches or schools. The decision as to whether a license may issue at a location within 500 feet of a church or school has been delegated to the affected institution. Legislative neutrality, therefore, has effectively delegated the policy decision of liquor licensing to private entities. An objection filed by such a private entity is unreviewable [8] and, therefore, operates as an absolute veto over any application subject to § 16C.

Even if the legislature intended to maintain a general prohibitory policy when it amended § 16C in 1970, that intention could not save an otherwise invalid delegation of power. Due process analysis focuses on the *effect* of a statutory scheme. The effect of § 16C is to vest authority in private persons "uncontrolled by any standard or rule prescribed by legislative action." *Roberge, supra,* 278 U.S. at 122, 49 S.Ct. at 52. It is that lack of a legislatively enacted standard which makes § 16C an example of legislative neutrality creating unwarranted delegation.[9]

The Commonwealth argues that the state's power to ban all liquor outlets near churches or schools implies the lesser power to conditionally approve licenses, given the consent of affected institutions. It supplements that argument by contending that the 1970 enactment of § 16C merely shifted the burden of objection to the church or school, thereby relieving the applicant of the burden of gaining consent. *See Arno, supra,* at 1227. The Commonwealth would, therefore, characterize the 1970 amendment as a liberalization of the law with respect to license applicants such as Grendel's.

The Commonwealth's theory misconceives the due process interests at stake here. The distinction between waiving a legislative restriction and imposing a private one is not merely procedural. Rather, that distinction is one of critical substance, established by the Supreme Court to set an outer limit to the exercise of public power by private persons. To ignore that distinction would deprive Grendel's of a liquor license, without any legislative, judicial or administrative determination that its issuance would be contrary to the public interest. Instead, Grendel's would be deprived of a license solely because a private entity "uncontrolled by any standard or rule" vetoed its application. Against this fundamental deprivation of due process, no "liberalization" or "lesser included power" argument can survive.

This court respectfully disagrees with the Supreme Judicial Court's determination that there is "no material distinction [between the 1968 and 1970 enactments] for the purpose of analyzing the delegation issue." *Arno, supra,* at 1228. The 1970 amendment had greater substantive effect than merely shifting the burden of objec-

---

**8.** The *Arno* court noted that a hearing is available to test whether a filed objection meets the statutory criteria—i. e., whether the objector is a church or school actually located within 500 feet of the applicant's premises and whether the objection was authorized by the objector's governing body. *See Arno, supra,* 384 N.E.2d at 1228. Indeed, the Church's first objection to Grendel's application was rejected by the CLC for failure to meet the statutory element of due authorization.

*Arno* makes clear, however, that a church or school may object without having to submit to a hearing at which its reasons or motives are examined or explained. *Id.* Simply put, under § 16C a church or school may exercise its discretion to object for good reason, bad reason, or no reason at all.

**9.** Thus, certification of the issue of legislative intent to the Supreme Judicial Court, as suggested by the Commonwealth, would be pointless, since such a determination would have no bearing on the effect of the statute's actual operation.

tion. Rather, the 1970 amendment actually reversed the underlying policy of the statute. Before 1970, no application was processed until the consent of § 16C entities had been solicited and obtained by the applicant. The policy was clear. The position of the Commonwealth was not neutral. Liquor licenses were banned, unless the affected church or school signified approval. To the contrary, the present policy under § 16C is that liquor licenses are presumed to be proper for further processing, unless a church or school files an objection. Given such an objection, the issue is foreclosed without appeal or other recourse.

The substantive distinction becomes apparent when one considers the effect of a church's silence under each of the statutory schemes. Given a church's silence before 1970, the Commonwealth imposed an absolute bar to the granting of a license. Since 1970, the Commonwealth's policy is to permit further consideration of an application, should a church or school remain silent on the issue. That difference reflects more than a mere imposition on a church of a burden to object. It demonstrates a substantive change in legislative policy. In making that substantive change, the legislature impermissibly delegated, rather than exercised, its power. It is precisely that delegation which triggers the due process concerns delineated by *Eubank, supra*, and its progeny.

■ This court concludes, therefore, that the delegation of veto power to churches and schools established by § 16C violates the Due Process Clause of the Fourteenth Amendment.[10]

## B. *The Establishment Clause.*

In recent cases, the Supreme Court has established a comprehensive analytic framework for testing the validity of a statute challenged under the Establishment Clause.

To be valid under this analysis, a statute 1) must have a secular legislative purpose, 2) must have a principal or primary effect that neither advances nor inhibits religion, and 3) must not foster an excessive entanglement with religion. The degree of entanglement between state and religion is to be measured by considering a) the character and purpose of the benefited institution, b) the nature of the benefit, c) the resulting relationship between the state and the religious authority, and d) the potential for political divisiveness created by the challenged statute. *See Committee for Public Education v. Regan,* 444 U.S. 646, 650, 100 S.Ct. 840, 845, 63 L.Ed.2d 94 (1980); *Wolman v. Walter,* 433 U.S. 229, 235–36, 97 S.Ct. 2593, 2598–99, 53 L.Ed.2d 714 (1977); *Roemer v. Board of Public Works of Maryland,* 426 U.S. 736, 748–49, 96 S.Ct. 2337, 2345–46, 49 L.Ed.3d 179 (1976).

Though the test is well-established, even the Supreme Court has recognized that its decisions have "sacrifi[ced] clarity and predictability for flexibility," *Regan, supra,* 444 U.S. at 662, 100 S.Ct. at 851, and have erected a "blurred, indistinct, and variable barrier" between church and state, *Lemon v. Kurtzman,* 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971). That alone makes a detailed analysis of applicable precedent of dubious value in this case. Moreover, the Court has apparently never faced the situation presented here—a legislative delegation of licensing power to a church. For both reasons, this court's application of the three-pronged test must proceed largely without the guidance of controlling precedent.

The Commonwealth first defends § 16C as having the valid secular legislative purpose of protecting spiritual, cultural, and educational centers from the "hurly-burly" associated with liquor outlets. Grendel's

---

**10.** Plaintiff has also assailed § 16C as violative of due process because of the lack of a hearing to probe the standards and motives governing § 16C entities' exercise of their veto powers. In view of this court's decision concerning plaintiff's primary due process claim, it is unnecessary to reach this issue.

To the extent that § 16C is invalid because it permits private parties to use public power for invalid purposes, those aspects of § 16C are better discussed in connection with particular allegations made by Grendel's, e. g., its Establishment Clause and antitrust claims, *infra*.

concedes that such a purpose satisfies the first part of the test. As § 16C includes public schools as well as private churches within its ambit, and because the legislature could reasonably believe that community activities at either type of institution might be adversely affected by proximity to liquor outlets, Grendel's concession of a legitimate secular purpose seems fully warranted. *See Walz v. Tax Commission,* 397 U.S. 664, 672–73, 688–89, 90 S.Ct. 1409, 1413, 1421, 25 L.Ed.2d 697 (1970) (plurality opinion of Blackmun, J., and concurring opinion of Brennan, J.); *McGowan v. Maryland,* 366 U.S. 420, 450, 81 S.Ct. 1101, 1117, 6 L.Ed.2d 393 (1961).

The second element of the test requires a finding of unconstitutionality if the statute might "*in part* have the effect of advancing religion," *Committee for Public Education v. Nyquist,* 413 U.S. 756, 784 n. 39, 93 S.Ct. 2955, 2971, n. 39, 37 L.Ed.2d 948 (1973), *quoting and adding emphasis to Tilton v. Richardson,* 403 U.S. 672, 683, 91 S.Ct. 2091, 2098, 29 L.Ed.2d 790 (1971). Grendel's contends that § 16C effectively promotes religious authority by conferring on churches the unfettered opportunity to realize economic advantage and exercise political power.

The political dimension of § 16C has already been partly described in the discussion of due process, *supra.* What merits emphasis here is the extent to which a church under § 16C could lawfully exercise its political power to veto license applications for purely religious reasons. Thus, to take an extreme example, a Protestant church could exercise its veto solely to exclude non-Protestant applicants from obtaining liquor licenses within 500 feet of that church. Even such a discriminatory and ignoble motive would not be subject to review, because § 16C provides the church with unfettered discretion to file an objection that constitutes an absolute veto of the application. *See* note 8, *supra.*

Similarly, a § 16C institution could conceivably exercise its veto power solely for its economic benefit by tying that decision, directly or indirectly, to the presence or absence of a donation by the applicant. Indeed, the relevance of such potential economic benefit to the Establishment Clause issue becomes all the more striking when one considers the institutions granted veto power under § 16C. Public schools are rarely, if ever, the beneficiaries of donations. The potential economic benefit conferred by § 16C, therefore, is effectively limited to churches and private schools—many of the latter, of course, being directly or indirectly controlled by churches.

It is no answer to suggest that most churches would not abuse the power granted to them under § 16C. The critical fact is that § 16C provides the potential for such abuse. While the Supreme Court's decisions do not, for the reasons described earlier, provide precise guidance for this court, they do underscore one basic admonition. Public money and public power may not be used if a primary effect of that use is to advance churches as religious institutions. *See Walz, supra,* 397 U.S. at 688–89, 90 S.Ct. at 1413 (Brennan, J., concurring). Thus the Court has insisted that there be adequate controls ensuring a purely secular purpose before public programs of aid to private schools are upheld. *See, e. g., Regan, supra* (concerning secular control of test grading and discussing precedents). By providing no such controls, § 16C legitimizes the potential use of delegated public power for religious purposes.

Against this effect, the Commonwealth's proffer of a predominant secular purpose is unavailing. It must be stressed that the "primary effect" test looks to the actual effect of a statute, not the legislative intent behind its enactment. *Nyquist, supra,* 413 U.S. at 773–74, 93 S.Ct. at 2965–66. Nor does the existence of an actual secular effect save § 16C. It is true that a merely incidental benefit to a church will not void an otherwise valid statute, *see Reomer, supra,* 426 U.S. at 748, 96 S.Ct. at 2345. But, § 16C clearly provides churches with more than a merely incidental benefit. The statute delegates political power that may be wielded by a church to advance it as a religious institution. It is precisely that

relationship between political and religious authority that the Establishment Clause forbids.

■ The Commonwealth's further defense, based upon the presumed constitutionality of statutes banning liquor licenses near churches, misses the point. Such statutes are clearly distinguishable. Section 16C does not impose such a flat statutory ban. Indeed, § 16C's Establishment Clause defect exists because that statute does *not* impose a flat ban. Instead, it grants churches uncontrolled and standardless veto power to determine what licenses will be banned.[11] The legislature may not delegate that kind of power to a church.[12]

## C. Equal Protection.

Grendel's advances two arguments in support of its assertion that § 16C denies equal protection of the laws. First, it claims that the exemptions included in § 16C are wholly irrational. Second, it contends that the potential for arbitrary action created by § 16C constitutes the kind of capricious decision making prohibited under the Equal Protection Clause.

■ It is well settled that the breadth of a state's power to regulate economic behavior is vast. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303–05, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *Williamson*

*v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). As the Court observed in *McGowan, supra*, 366 U.S. at 426, 81 S.Ct. at 1105, a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." Moreover, where the state acts under the Twenty-first Amendment, the standard of review is even more forgiving. *See LaRue, supra*, 409 U.S. at 114, 93 S.Ct. at 395 ("the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals.").

■ Given these principles, the legislature's decision to exempt from a § 16C veto innholders and premises located ten or more floors above street level appears sufficiently rational to satisfy the dictates of equal protection analysis. With respect to innholders, the legislature could rationally conclude that most patrons of a liquor outlet located at an inn would be customers of the inn itself and hence less likely to venture outside of the inn to disturb nearby churches and schools. Likewise, the legislature could rationally believe that a distance of ten floors suffices to diminish the disturbance generated by a liquor outlet thus situated. In either case, it is not this court's duty to second-guess such determinations.

11. Zoning regulations also present the potential for bargaining and discretion, and churches may, of course, exercise such powers along with other property owners subject to such regulations. In zoning, however, the breadth of regulation negates any finding that the regulation has a primary effect of advancing religion. Here, because § 16C defines a narrow class of beneficiaries and because churches and their related schools compose such a large part of the protected class, the same inference of neutrality cannot be drawn.

Likewise, a licensing structure in which the local licensing board could consider a church's objection, but would retain the right to make an independent determination, is distinguishable from this case.

12. The defendants have cited three lower state court opinions which they claim as precedent upholding the validity of § 16C. The first, *Appeal of Rusch*, 32 Pa.Cmwlth. 578, 379 A.2d 1375 (1977), is inapplicable because it involved the exercise of a licensing board's discretion in

rejecting an application for a license near a church. Moreover, no constitutional challenge was either advanced, considered, or decided in *Rusch*. The second, *Horne v. Hernando County*, 297 So.2d 606 (Fla.App.1974), is distinguishable because it upheld a county ordinance flatly banning licenses within 1500 feet of a church or school.

The third case cited, *Wiles v. Michigan Liquor Control Comm'n*, 59 Mich.App. 321, 229 N.W.2d 434 (1975), did reject an Establishment Clause attack on a statute virtually identical to § 16C. But it is clear from the opinion in *Wiles* that the court was not presented with the specific due process and Establishment Clause arguments advanced here. Indeed, *Wiles* contains only a short paragraph concluding that the licensing statute did not have the primary effect of advancing religion. Given its conclusory nature, *Wiles* is hardly persuasive authority on the issues before this court.

With respect to Grendel's second argument, the matter appears closer. But the mere possibility that one enjoying power under a statute might act arbitrarily is not enough to invalidate legislation on equal protection grounds.[13] In each of the cases cited by the plaintiff, for example, it was the arbitrary action of an official that constituted the violation of equal protection. In none of those cases was the statute itself overturned because of the potential for such arbitrary action. *See Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Hornsby v. Allen*, 326 F.2d 605, 609 (5th Cir. 1964).

In *Niemotko v. Maryland*, 340 U.S. 268, 273, 71 S.Ct. 325, 328, 95 L.Ed. 267 (1951), also cited by the plaintiff, the Supreme Court reviewed an informal municipal licensing "practice" used to bar the use of a local park to Jehovah's Witnesses. The Court struck down the "practice" as violative of free speech and religion, but carefully limited its equal protection holding to the ruling that in the specific situation before the Court, the "practice" had been applied arbitrarily.

### D. *The State Exemption Defense.*

Aside from its constitutional challenges, Grendel's also seeks to overturn § 16C because of its alleged inconsistency with federal antitrust law, which is made controlling under the Supremacy Clause.[14] Grendel's theory, in general outline, is that § 16C creates a species of economic power which churches and private schools could exercise in anticompetitive ways.[15]

The issues before the court at this point arise from cross-motions for summary judgment aimed at the Commonwealth's assertion of a state exemption defense to Grendel's antitrust theory. Under *Parker, supra*, anticompetitive activities properly authorized and supervised by a state are immune to challenge under federal antitrust law. In *Midcal, supra*, 445 U.S. at 105, 100 S.Ct. at 943, a unanimous Supreme Court stated a two-part test for the establishment of *Parker* immunity: "[f]irst, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself," *quoting City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978) (opinion of Brennan, J.).

Section 16C, of course, represents a clear articulation of a state policy in favor of a church or school veto over liquor license applications. The *Parker* test, however, requires more than a clear statement of a legislative purpose that incidentally affects competition. It requires instead a clear statement of policy in favor of the anticompetitive effects themselves. There is in this case no clear statement by the Commonwealth that the potential anticompetitive effects of § 16C are legitimate, rational, or necessary in protecting centers of community activity from disturbance by liquor outlets.

Even were such a policy statement present, however, § 16C does not involve the Commonwealth in sufficiently active supervision to warrant immunity under the state exemption doctrine. The simple fact is that "state authori[ty], approval, encouragement, or participation in restrictive private conduct confers no antitrust immunity." *Cantor v. Detroit Edison*, 428 U.S. 579, 592–93, 96 S.Ct. 3110, 3118, 49 L.Ed.2d 1141 (1976). Here, § 16C does no more than approve or ratify such conduct, and hence cannot be regarded as the kind of direct state involvement required under *Parker*. Indeed, the Court in *Midcal, supra*, faced an

---

**13.** As has been noted, *supra*, however, that possibility does provide grounds for due process and Establishment Clause challenges.

**14.** U.S.Const., art. VI.

**15.** For example, church members who own liquor establishments or restaurants might exploit their churches' § 16C veto power to disadvantage a competitor seeking to obtain a license. At this stage of the case, the court expresses no opinion as to the validity of such a theory and no findings as to the facts surrounding Grendel's application.

analogous situation in which California ratified resale price maintenance schemes developed by private liquor dealers. In unanimously rejecting the proffer of a *Parker* immunity defense, the *Midcal* Court reemphasized the requirement that the state actively supervise the challenged private anticompetitive acts. *Id.* 445 U.S. at 105, 100 S.Ct. at 943.

█ This court determines that § 16C is not immune to an antitrust challenge. Because the Commonwealth has not clearly stated a policy in favor of § 16C's potentially anticompetitive effects and because it has not actively supervised those effects, the state exemption doctrine does not apply.

### III.

For the reasons described in this opinion, the court holds that Mass.Gen.Laws ch. 138, § 16C violates the Due Process Clause of the Fourteenth Amendment and the Establishment Clause of the First Amendment, but that it does not violate the Equal Protection Clause of the Fourteenth Amendment. The court also holds that the state exemption doctrine of *Parker v. Brown, supra,* does not preclude plaintiff from relief under federal antitrust law.

An order will issue.