**GRENDEL'S DEN, INC., Plaintiff,**

v.

**John P. LARKIN, et al., Defendants.**

**Civ. A. No. 77–3418–T.**

United States District Court,
D. Massachusetts.

March 19, 1984.

Supplemental Opinion April 4, 1984.

Jonathan Shapiro, Stern & Shapiro, Boston, Mass., for plaintiff.

Judith S. Yogman, Asst. Atty. Gen., Boston, Mass., for defendants.

David B. O'Connor, Legal Counsel, Law Dept., Cambridge, Mass., for Cambridge License Com'n, Davenport and Cremins.

## OPINION

TAURO, District Judge.

Petitioners were prevailing counsel in a civil rights action [1] brought by Grendel's Den, Inc. ("Grendel's"), a Harvard Square restaurant, against the Massachusetts Alcoholic Beverages Control Commission ("ABCC") and the Cambridge License Commission ("CLC"). Grendel's basic grievance was that defendants, relying on Massachusetts Gen.Laws ch. 138 section 16C ("section 16C"), had denied the restaurant's application for a liquor license due to the opposition of a neighboring church. Grendel's suit successfully challenged section 16C, establishing that it unconstitutionally delegated to churches and schools an absolute veto power over the approval of liquor licenses.

Having prevailed in its civil rights claim, Grendel's petitioned for an award of attor-

---

1. Filed pursuant to 42 U.S.C. § 1983 (1981).

neys' fees and costs, pursuant to 42 U.S.C. § 1988 (1981), the Civil Rights Attorney's Fees Award Act of 1976 ("the Fees Act"). Defendants vigorously oppose such an award. The merits of the parties' respective positions on the fee issue can best be appreciated by reviewing the purpose of the Fees Act, the history of the underlying litigation, as well as the scope and quality of petitioning counsel's effort in bringing that litigation to a successful conclusion.

## I.

## THE FEES ACT

The Fees Act provides in relevant part that:

> In any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party ... a reasonable attorneys fee as part of the cost.[2]

42 U.S.C. § 1988. The underlying concept behind the Fees Act is a departure from the traditional American approach of handling litigation costs, which requires that each side to a law suit pay its own lawyers and related expenses.

A number of judicial and legislative exceptions to the American approach were developed prior to the enactment of the Fees Act. One of the more significant of these was the "private attorney general" doctrine under which courts awarded attorneys' fees to successful plaintiffs as a means of encouraging law suits by private individuals whose purpose was to vindicate important public interests.[3]

In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court, limited the private attorney general doctrine to situations in which Congress had authorized an award of attorneys fees to prevailing parties.

Since the approach taken by Congress to this issue has been to carve out specific exceptions to a general rule that federal courts cannot award attorneys' fees beyond the limits of 28 U.S.C. § 1923, those courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases.

*Alyeska,* 421 U.S. at 269, 95 S.Ct. at 1627.

Explicitly reacting to the *Alyeska Pipeline* decision, Congress enacted the Fees Act in 1976 to achieve consistency in the application of civil rights laws. S.Rep. No. 1011, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5909. The legislative history of the Fees Act states:

> This amendment to the Civil Rights Act of 1866 ... gives the Federal courts discretion to award attorneys' fees to prevailing parties in suits brought to enforce the civil rights acts which Congress has passed since 1866. The purpose of this amendment is to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society* ... and to achieve consistency in our civil rights laws.

S.Rep. No. 1011, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5909.

Unlike the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(d)(1) (Supp. 1983), the Fees Act does not specify an hourly rate by which courts should calculate fee awards.[4]

---

**2.** Notwithstanding their opposition to an award of attorneys' fees, defendants do concede that Grendel's is a "prevailing party" under the terms of section 1988.

**3.** *See State of Hawaii v. Standard Oil Company of California,* 405 U.S. 251, 266, 92 S.Ct. 885, 893, 31 L.Ed.2d 184 (1972); *Lee v. Southern*

*Home Sites Corporation,* 444 F.2d 143, 144–45 (5th Cir.1971).

**4.** Under the Criminal Justice Act, fee awards to litigators representing indigent defendants are limited to "$30 per hour for time reasonably expended in court or before a United States magistrate and $20 per hour for time reason-

*See King v. Greenblatt,* 560 F.2d 1024, 1026 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (holding that attorneys' fees under the Fees Act are not to be computed at the conservative rates established by the Criminal Justice Act). Because the Fees Act and its legislative history do not specify standards that courts should use in calculating reasonable fee awards, each circuit has developed its own criteria.[5]

Since its decision in *Furtado v. Bishop,* 635 F.2d 915, 919–20 (1980), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980), the First Circuit has used the "lodestar" approach in analyzing fee applications.[6] *See Wojtkowski v. Cade,* 725 F.2d 127 at 129 (1st Cir.1984). Under that approach,

> [t]he starting point is to calculate the "lodestar": "The number of hours reasonably expended multiplied by a reasonable hourly rate." … This would involve separating out work done in relation to a firm's hierarchy, from senior partner to junior associate (and, we would add, including work that was or ought to have been assigned to a nonlawyer); eliminating time beyond that consistent with a standard of reasonable efficiency and productivity; and, after receiving documentation and possibly holding a hearing, assigning appropriate hourly rates for the kinds of work done

by those at different levels of expertise. This results in a "lodestar" fee that then is adjusted upward or downward to reflect the contingent nature of any fee (if such is not reflected in the hourly rate), delay in payment, quality of representation (i.e., an unusually good or poor performance above or below the skill already reflected in the hourly rates), exceptional (and unexpected) results obtained, etc.

*Furtado v. Bishop,* 635 F.2d at 920 (footnote and citations omitted).

## II.

### HISTORY OF THIS LITIGATION

A necessary first step in determining "the number of hours reasonably expended" by counsel in this case is to review the scope and course of the underlying dispute.

Grendel's brought this section 1983 action to challenge decisions by CLC and ABCC denying the restaurant a liquor license because its Harvard Square neighbor, The Holy Cross Armenian Catholic Parish Church, ("the Church"), opposed the issuance. The Church had objected to the license award under section 16C. The provisions of section 16C gave the Church effective veto over the issuance of any liquor license within 500 feet of its door.[7] Grendel's alleged that section 16C violated

---

ably expended out of court …." 18 U.S.C. § 3006A(d)(1). Additionally, the Criminal Justice Act limits the maximum compensation to $1000 for each attorney "in a case in which one or more felonies are charged, and $400 for each attorney in a case in which only misdemeanors are charged." 18 U.S.C. § 3006A(d)(2).

5. The legislative history of the Fees Act cites with approval several decisions applying different criteria. *See, e.g., Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974); *The Stanford Daily v. Zurcher,* 64 F.R.D. 680, 682 (N.D.Calif.1974) ("the amount of time devoted by the attorneys to the litigation; the value of the time in light of billing rates and of the attorneys' experience, reputation, and ability; and the attorneys' performance, given the novelty and the complexity of the legal issues in the litigation…."); *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 66 F.R.D. 483, 484–86 (W.D.N.C.1975).

6. This analysis is based on that used in *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980), and *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3rd Cir.1976).

Prior to *Furtado,* the First Circuit had used the twelve factor test of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19. *See King v. Greenblatt,* 560 F.2d at 1027.

7. Section 16C provides, in pertinent part:

Premises, except those of an innholder and except such parts of buildings as are located ten or more floors above street level, located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto….

Mass.Gen.Laws ch. 138 § 16C (1974).

three provisions of the federal Constitution: the establishment clause;[8] the equal protection clause;[9] and the due process clause.[10] Grendel's additionally alleged an antitrust claim under the Sherman Act, 15 U.S.C. §§ 1, 2, 15 (1973).

Proceedings in this case were stayed pending resolution by the Supreme Judicial Court of a constitutional challenge to section 16C by unrelated liquor license applicants. The Supreme Judicial Court subsequently upheld the validity of section 16C under both the state and federal constitutions. *Arno v. Alcoholic Beverages Control Commission,* 377 Mass. 83, 384 N.E.2d 1223, 1228 (1979); *Samel v. City of Pittsfield Licensing Board,* 377 Mass. 908, 384 N.E.2d 1230 (1979). Following the issuance of those decisions, the hearing and briefing schedule in this case resumed.

In an opinion issued August 14, 1980, this court held that section 16C violated the due process and the establishment clauses, but not the equal protection clause. With respect to the antitrust claim, this court held that the state exemption doctrine did not apply to immunize the Commonwealth from suit.[11] *Grendel's Den, Inc. v. Goodwin,* 495 F.Supp. 761, 769 (D.Mass.1980). Defendants appealed. In a divided opinion issued on April 7, 1981, the First Circuit reversed. *Grendel's Den, Inc. v. Goodwin,* 662 F.2d 88 (1st Cir.1981). Grendel's successfully petitioned for rehearing *en banc.* In another divided opinion, the *en banc* court affirmed this court's judgment on the establishment clause ground, without reaching the due process or antitrust claims. *Grendel's Den, Inc. v. Goodwin,* 662 F.2d 102 (1st Cir.1981). Defendants then appealed to the United States Supreme Court. On December 13, 1982, the Court, also in a divided opinion, affirmed the First Circuit's *en banc* decision. *Lar-*

*kin v. Grendel's Den, Inc.,* 454 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982).

On April 1, 1983, after a hearing and over the opposition of the Church, Grendel's liquor license application was approved by the CLC. Thereafter, Grendel's applied to this court for an award under the Fees Act. That application has been vigorously opposed by both defendants throughout what has been an extended schedule of briefings, hearings and conferences. This court finally took the fee issue under advisement on January 16, 1984.

## III.

### GRENDEL'S FEE APPLICATION

The Grendel's fee application seeks compensation for three attorneys who provided services and incurred expenses between 1977 and 1983. Petitioning counsel are Laurence Tribe and David Rosenberg, professors at the Harvard Law School, and Ira Karasick, a member of the New York bar.

Professor Tribe seeks to be compensated for 640.5 hours of service, at a rate of $275.00 per hour. Professor Rosenberg's claim is for 174.0 hours, at an hourly rate of $125.00. Mr. Karasick seeks compensation for 399.5 hours at hourly rates varying between $25.00 and $75.00.

The starting point of this lodestar inquiry is to determine the number of hours reasonably expended by counsel. That inquiry requires resolution of two distinct but related issues. The first concerns itself with an analysis of how much time was actually spent on this litigation. The second focuses on to what extent that commitment of time was reasonable.

### A) *Time Actually Spent*

[1] Attorneys seeking compensation under the Fees Act have the burden of sub-

---

8. U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion ....").

9. U.S. Const. amend. XIV, sec. 1.

10. U.S. Const. amend. XIV, sec. 1.

11. The case at that time was before this court on cross motions for summary judgment. With respect to the antitrust claim, the only issue ripe for decision was the Commonwealth's assertion of a state exemption defense. *Grendel's Den, Inc. v. Goodwin,* 495 F.Supp. 761, 763 & n. 6 (D.Mass.1980).

stantiating their claim by submitting to the court a full and detailed accounting of the time spent on the case and the duties performed. *King v. Greenblatt*, 560 F.2d at 1027. The preferred method of establishing counsel's time commitment is by the maintenance of time sheets prepared contemporaneously with the services performed. *Souza v. Southworth*, 564 F.2d 609, 612 (1st Cir.1977).

Petitioning counsel concede that their fee requests are not supported by contemporaneous records. They have endeavored, however, to support their asserted expenditure of time by the submission of affidavits and accompanying exhibits, as well as by their testimony at an evidentiary hearing held by this court. By these means, counsel have sought to reconstruct the time actually expended by them through their analysis of pleadings, correspondence, diary entries, memoranda and court appearances.

Defendants urge this court to deny the fee request because of counsel's failure to maintain contemporaneous records. In doing so, they rely principally on Chief Judge Campbell's warning in *Souza* that,

[S]uch a failure to document an attorney's time might merit disallowal, or at least drastic reduction, of a fee award.

*Id.*

■ Defendants read too much into Judge Campbell's admonition. While a failure to maintain contemporaneous records clearly increases petitioners' evidentiary burden, *see Ramos v. Lamm*, 713 F.2d 546, 553 n. 2 (10th Cir.1983), that circumstance alone does not justify an automatic reduction or rejection of the hours claimed, *see Johnson v. University College*, 706 F.2d 1205, 1207 (11th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). Rather, this court has an obligation to scrutinize all of the evidence proffered in support of a fee application and to then make a reasoned, individualized judgment

as to whether petitioning counsel have met their burden of persuasion.

In this case, the court has carefully analyzed the relevant affidavits and accompanying documentation. Of particular assistance to the court was the testimony of the various counsel at the evidentiary hearing held with respect to the fee issue. After such review, this court is persuaded and, therefore, finds that the documentation submitted, and the testimony of petitioning counsel, establish that the hours claimed are an honest and reliable reconstruction of the time spent by them in furtherance of this litigation.[12]

### B) *Reasonableness of the Time Spent*

The fact that this court accepts counsel's submission as to the number of hours spent by them is not the end of the inquiry. Rather, the court must also be satisfied that the time actually spent was reasonably necessary to the successful conclusion of this litigation.

■ Multiple representation raises the possibility that counsel's respective contributions to the litigation effort have overlapped unnecessarily. Where counsel's efforts have been duplicative, defendants may not be charged for the unnecessary expenditure of time. *Copeland v. Marshall*, 641 F.2d at 902–03. Defendants urge the court to reduce the number of hours claimed here, asserting that petitioning counsel's respective contributions were unnecessarily duplicative, and that the issues involved were not sufficiently complex to justify the time allegedly spent by them.

■ It is clear from the submitted documents, and the testimony at the evidentiary hearing, that the petitioning counsel involved themselves, to a greater or lesser degree, in every phase of this case. Equally clear from that evidence, is that Professors Tribe and Rosenberg were lead coun-

12. The consequence of counsel's failure to maintain contemporaneous records in this case is discussed *infra* in Section III F.

sel in this case,[13] that they divided responsibility for the various tasks, and that their time charges are limited to those occasions when they worked individually, or when cooperative effort by them was reasonably necessary to efficiently achieve a productive result.

For example, most of Professor Tribe's charges related to the preparation of his briefs and arguments before this court, the Court of Appeals and the Supreme Court. Professor Rosenberg's time was directed principally to preparing the pleadings, conducting discovery, overseeing and evaluating Mr. Karasick's research effort, and generally coordinating the course of the litigation. Tribe and Rosenberg conferred frequently, thereby developing and fine tuning their legal theories and strategy. Both attended each of the various court hearings. Given the difficult and sophisticated nature of the underlying issues, it is not at all surprising or unreasonable that they would do so.

Defendants attempt to cast this litigation as little more than a liquor license case. That characterization is about as accurate as would be one that described *Moby Dick* as being a book about a white whale. The license here, like the white whale in *Moby Dick*, was merely the vehicle for examining a number of subtle and complex issues. The fact that competent counsel deemed it necessary to confer frequently in a case such as this is not to be taken as an indication that their cooperative effort was unnecessary, unproductive or duplicative. Indeed, the contrary is true.

It is unnecessary to rehearse the history of this litigation [14] to appreciate the formidable task that faced petitioning counsel. They had the heavy burden of convincing this court to reject the persuasive precedent presented by the Supreme Judicial Court opinion in *Arno*, which held section 16C to be valid under both the state and federal constitutions. Counsel then had

the challenge of persuading an *en banc* First Circuit panel to affirm this court, despite a prior reversal by the initial reviewing panel. Finally, counsel had the task of holding their win by convincing the Supreme Court to break entirely new constitutional ground. That this case was not a mere rehash of familiar constitutional principles is best appreciated by reflecting on Chief Justice Burger's comment that,

> we have not previously had occasion to consider the entanglement implications of a statute vesting significant governmental authority in churches.

*Larkin v. Grendel's Den, Inc.*, 103 S.Ct. at 512 (1982).

Defendants assert that because Grendel's victory came as a result of its establishment clause claim, counsel should not be compensated for any time spent developing their equal protection theory. In support of that position, defendants cite the First Circuit's language in *Nadeau v. Helgemoe*, 581 F.2d 275 (1978).

> the amount of attorney's fees [awarded] should be based on the work performed on the issues in which [plaintiffs] were successful.

*Id.* at 279. Defendants' argument misses the point. Grendel's was in fact successful with respect to the fundamental issue in the case—whether section 16C impermissibly afforded the Church an absolute veto power over the issuance of liquor licenses. Defendants' argument is disposed of by the Court's language in *Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983),

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 1940 (footnote omitted).

This court finds, therefore, that the number of hours expended by Professors Tribe

---

**13.** In view of this court's disposition of Mr. Karasick's claim, *infra* Section III E, it is unnecessary to analyze the reasonableness of his time charges or requested rate of compensation.

**14.** See Section I *supra*.

and Rosenberg were both reasonable and necessary to the efficient and productive resolution of this litigation.

### C) *Reasonableness of Professor Tribe's Requested Hourly Rate*

█ Professor Tribe's request for a $275.00 hourly rate is based primarily on two criteria: *first,* his reputation as a scholar in the area of constitutional law and, *second* the fact that, during the past few years his hourly rate has ranged from $165.00 to $525.00. Defendants argue that Professor Tribe's $275.00 asking figure is excessive, in relation to his ability and reputation as a litigator, and because his requested fee rate exceeds that "prevailing in the community for similar work ...." *Maceira v. Pagan,* 698 F.2d 38, 40 (1st Cir. 1983).

Mr. Tribe is a tenured professor of constitutional law at Harvard Law School. He occupies Harvard's only chair in that subject, the Tyler Professorship of Constitutional Law. His treatise on the subject of constitutional law is cited regularly by the Supreme Court, as well as by lower courts throughout the country. It is clear that, by any fair and objective standard, Professor Tribe is one of this country's foremost authorities on the subject of constitutional law.

Although he has won five of the seven cases he has argued before the Supreme Court, Professor Tribe is not a litigator in the classic sense of that term. Rather, he is a unique constitutional authority who makes his expertise available to law firms and others at hourly rates ranging from $325.00 to $525.00. The fact that his advice and counsel on constitutional matters is considered to be worth three to five hundred dollars an hour, by lawyers who must deal with and litigate constitutional issues, is highly relevant in assessing the reasonable value of his services. *See National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319,

1326 (D.C.Cir.1982). In another context, Judge Breyer made the point succinctly.

> If one wishes to be literal, the "prevailing" rate "in the community" for work performed by an outside specialist (where that outside specialist is reasonable) is most likely to be that outside specialist's ordinary rate ....

*Maceira v. Pagan,* 698 F.2d at 40 (quoting *Copeland,* 641 F.2d at 892).

It is unrealistic and unfair to compare and thereby limit Professor Tribe's fee application by reference to fees charged by those in general private practice who occasionally foray into the complex maze that is constitutional law. He does not compete in the traditional legal market place. To the contrary, Professor Tribe is a nationally recognized academic who, on a limited basis, deals with a narrow constituency, primarily lawyers who refer complex constitutional issues to him.[15] The value that lawyers and law firms in the community place on his advice is probably the most relevant and fair yardstick that can be used in measuring the reasonableness of his fee request.

The $275.00 rate Professor Tribe seeks for handling and winning this case, involving precedent setting constitutional issues, is considerably less than his current rate, and is about in the middle of what he has charged and received during the relevant years. Two hundred and seventy-five dollars an hour is a lot of money. Indeed, it is about ten times the rate of pay that Congress deems appropriate for federal judges, given a typical fifty hour work week. But the fact that others choose or have to work for less is not a fair or valid reason to deny Professor Tribe the full measure of the compensation that Congress prescribed in the Fees Act.

As the First Circuit has noted:

> the [Fees Act's] legislative history leaves no doubt that Congress intended not only that the fees be adequate enough to "attract competent counsel" but "that the amount ... [would] be governed by the

---

**15.** Indeed, his involvement in this case was at the behest of Professor Rosenberg who, at the

time, was a name partner in the Cambridge based law firm, Rosenberg, Baker and Fine.

same standards which prevail in other types of equally complex Federal litigation such as antitrust cases."

*King v. Greenblatt,* 560 F.2d at 1026 (footnotes omitted) (quoting S.Rep. No. 1011, *supra* at 6, 1976 U.S.Code Cong. & Ad. News at 5913).

For all these reasons, this court determines that Professor Tribe's fee request of $275.00 per hour is reasonable.

### D) *Reasonableness of Professor Rosenberg's Requested Hourly Rate*

■ Professor Rosenberg's fee request is for $125.00 per hour. His contribution to the overall litigation effort has already been discussed and need not be repeated. He is a professor of law at Harvard and, in the past, maintained a practice with a Cambridge, Massachusetts law firm. He is a qualified and respected lawyer, although he does not now have the unique reputation enjoyed by his colleague Professor Tribe. His rate of outside compensation has recently ranged between $125.00 and $175.00 per hour.

Defendants' most substantive argument advanced for reducing Professor Rosenberg's fee award to an hourly rate ranging between $60.00 and $80.00 per hour seems based on the fact that he is a salaried law professor without overhead. That contention has no merit. *Palmigiano v. Garrahy,* 616 F.2d 598, 601–602 (1st Cir.1980), *cert. denied,* 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980). What is of significance is that Professor Rosenberg's fee request is consistent with the assessment proffered by defendants' expert as to the value of the type of services that were rendered in this case.

This court determines that Professor Rosenberg's fee request of $125.00 per hour is reasonable.

### E) *Mr. Karasick's Fee Request*

■ Defendants oppose Mr. Karasick's fee request primarily because a substantial portion of his work was performed while he was a law student and a legal assistant to Professor Rosenberg. The defendant CLC particularizes its opposition, alleging that Mr. Karasick's services amounted to the unauthorized practice of law. This court need not resolve that issue, as it is persuaded by the evidence that Mr. Karasick's relationship to this litigation was in the nature of a legal intern to Professors Tribe and Rosenberg. He worked under their supervision. They had no agreement with him as to compensation. The evidence demonstrates that he worked primarily on researching the legal issues. The court determines that whatever value is to be placed on his services should be done by him together with Professors Tribe and Rosenberg, and then absorbed by the latter as an overhead item. *See Lamphere v. Brown Univ.,* 610 F.2d 46, 48 (1st Cir. 1979). For this reason, Mr. Karasick's request for a fee award and reimbursement of expenses is denied.

### F) *Counsel's Request For an Upward Adjustment of the Lodestar Award*

■ Counsel request a substantial increase in the lodestar award because of the contingent nature of the enterprise, the exceptional result obtained by them, and the overall superior quality of their professional effort. The Fees Act permits an upward adjustment, given such factors. *Furtado* at 920. Were it not for the petitioning counsel's failure to document their fee request with contemporaneous time records, the court would grant their request for a substantial lodestar increase. As has already been stated, this court is satisfied that the hours claimed by them "are an honest and reliable reconstruction." But, the court must also keep in mind the First Circuit's preference that requests under the Fees Act be supported by contemporaneous records, and the admonition of Judge Campbell in *Souza* that failure to do so "might merit ... at least, drastic reduction of a fee award." 564 F.2d at 612. While this court feels it would be inequitable to reduce petitioning counsel's lodestar award, it does deem it appropriate to deny their request for an upward adjustment of the lodestar figure.

### G) *Petitioning Counsel's Expenses*

■ Professor Tribe claims $6,157.18 in expenses. Of that amount, $4,182.82 was expended for the printing of briefs for the Court of Appeals ($876.51) and the Supreme Court ($3,306.31). Defendants oppose reimbursement of these printing costs, citing counsel's failure to petition the Court of Appeals for costs under Fed.R. App.P. 39, and the policy of the Supreme Court not to tax such charges as costs. Defendants' argument overlooks the basic fact that Professor Tribe seeks reimbursement under the Fees Act, not under any court rule or policy. Defendants offer no authority for their proposition that such expenses may not be considered reasonable under the Fees Act, and this court is aware of none. The request for reimbursement of those expenses is allowed.

■ Defendants' remaining objections focus on Professor Tribe's choice of hotel and ground transportation while in Washington, D.C. to argue before the Supreme Court, as well as his use of Federal Express as opposed to the mail service. The Fees Act permits reimbursement of expenses reasonably incurred in the furtherance of successful civil rights litigation. There is no question that the disputed expenses were incurred in connection with the prosecution of this case.

Congress limits room and board reimbursement for federal judges to a total of $75.00 per day. 5 U.S.C. § 5702(c) (supp. 1983). The Congress imposed no such limitation when enacting the Fees Act. The test under the Fees Act is reasonableness. The hotel used by Professor Tribe, and the ancillary expenses incurred by him are run of the mill costs incurred routinely by men and women having business in the District of Columbia. The court determines that they are fully reimbursable under the Fees Act.

Professor Rosenberg seeks reimbursement of $165.00 in expenses. No substantive opposition has been offered to that request and, therefore, it is allowed.

## IV.

## ALLOCATION OF AWARDED FEES AND EXPENSES BETWEEN DEFENDANTS

■ Both the state (ABC) and municipal (CLC) defendants participated actively, from the District Court to the Supreme Court, in defending the constitutionality of section 16C. It is equitable, therefore, that they share equally the cost of the fees and expenses awarded to prevailing counsel.[16] *See* 2 Derfner and Wolf, *Court Awarded Attorney Fees*, § 17.03(2) at 17–10 (1983).

## CONCLUSION

1) Professor Tribe's request to be compensated for 640.5 hours at an hourly rate of $275.00 is granted. (Total: $176,137.50)

2) Professor Rosenberg's request to be compensated for 174 hours at an hourly rate of $125.00 is granted. (Total: $21,750.00)

3) Professor Tribe's request to be reimbursed for $6,157.18 in expenses is granted.

4) Professor Rosenberg's request to be reimbursed for $165.00 in expenses is granted.

5) Counsel's petition is otherwise denied.

6) Payment of the fees and expenses herein awarded are allocated equally between the defendants.

An order will ISSUE.

## SUPPLEMENTAL OPINION

■ At issue is plaintiff's supplemental application for an award of attorneys' fees and costs under 42 U.S.C. § 1988 ("the Fees Act"). The background of the underlying litigation has been detailed in several

---

**16.** Still pending before this court is counsel's supplemental application for an award of fees and costs incurred by Jonathan Shapiro in litigating this fee application. That application will be the subject of a future memorandum and order.

opinions,[1] and need not be repeated here. The instant request is for the fees and costs incurred in litigating plaintiff's primary fee application under the Fees Act. *See Grendel's Den, Inc. v. John P. Larkin,* No. 77–3418–T, slip op. (1st Cir. Mar. 19, 1984).

The standards to be used in determining fee applications under 42 U.S.C. § 1988 were reviewed at length in the March 19, 1984, opinion and are incorporated here by reference.[2] Applying those standards to the record here, this court determines that plaintiff's supplemental fee application is reasonable and should be allowed *in toto.*

The primary fee application was vigorously opposed, to the point of requiring an evidentiary hearing. Under the circumstances it was reasonable for plaintiff's counsel to retain independent counsel to process their fee request. They selected Jonathan Shapiro, a well-trained, highly respected attorney who has had considerable experience in the area of fee applications such as this. Mr. Shapiro's presentation of the primary fee application was efficient, thoroughly professional, and substantially successful, justifying the supplementary award sought here.

An order will ISSUE.

### ORDER

For the reasons stated in the memorandum issued this date, plaintiff's supplemental application for an award of attorneys' fees and costs in the amount of $17,348.73 is granted. Payment of the award is assessed equally between the defendants.

It is so ORDERED.

---

**1.** *Grendel's Den, Inc. v. John P. Larkin,* No. 77–3418, slip op. (D.Mass. Mar. 19, 1984); *Larkin v. Grendel's Den, Inc.,* 454 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982); *Grendel's Den, Inc. v. Goodwin,* 662 F.2d 102 (1st Cir.1981) (en banc); *Grendel's Den, Inc. v. Goodwin,* 662 F.2d 88 (1st Cir.1981); *Grendel's Den, Inc. v. Goodwin,* 495 F.Supp. 761 (D.Mass.1980).

**2.** The standards applied by this court in its March 19, 1984 opinion were consistent with those enunciated by the Supreme Court in its March 21, 1984 opinion, *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).