JOSEPH V. ARNO vs. ALCOHOLIC BEVERAGES CONTROL COMMISSION.

Suffolk. November 9, 1978. — January 12, 1979.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Constitutional Law*, Delegation of powers, Police power, Alcoholic beverages, Establishment of religion. *Due Process of Law*, Alcoholic liquors. *Alcoholic Liquors*.

General Laws c. 138, § 16C, as amended by St. 1970, c. 192, § 1, mandating that premises, with stated exceptions, located within a radius of five hundred feet of a church or school, shall not be licensed for the sale of alcoholic beverages "if the governing body of such church or school files written objection thereto," does not affront the Massachusetts Constitution as constituting an improper delegation of legislative power [85-90]; the statute comports with the due process clause of the Fourteenth Amendment to the Federal Constitution in that by legislative acts the opportunity is available for a hearing with respect to all pertinent questions under c. 138, § 16C, and for administrative and judicial review [90-91].

General Laws c. 138, § 16C, as amended by St. 1970, c. 192, § 1, providing special protection for churches and schools with respect to the proximity of premises which may be licensed for the sale of alcoholic beverages, has a secular legislative purpose, has a principal or primary effect which neither advances nor inhibits religion, and does not foster an excessive governmental entanglement with religion; the special protection provision is valid under both the Massachusetts and United States Constitutions. [91]

CIVIL ACTION commenced in the Superior Court on September 16, 1975.

The case was heard by *Nixon*, J., a District Court judge sitting under statutory authority, and reported by him to the Appeals Court. The Supreme Judicial Court, on its own initiative, ordered direct review.

*Robert Cohen (Jerome D. Groskind* with him) for the plaintiff.

*Paul W. Johnson,* Assistant Attorney General, for the defendants.

LIACOS, J. The plaintiff, Joseph V. Arno, challenges G. L. c. 138, § 16C,[1] as an improper, standardless delegation of legislative authority, and as violative of the establishment of religion clause of the First Amendment to the United States Constitution. We disagree with the plaintiff's characterizations, and hold the provision valid under both the State and Federal Constitutions.

The parties have stipulated to all the material facts. On July 16, 1975, the plaintiff applied to the Nantucket board of selectmen (board) for a liquor license for Arno's Restaurant, located at 41 Main Street (premises), Nantucket, Massachusetts. The restaurant is within 500 feet of the Centre Street United Methodist Church (church). A public hearing was held on the application on August 6, 1975. By a letter of that date, the recording steward of the church informed the board that the church's administrative board objected to the issuance of a liquor license to the plaintiff for the premises. In a letter dated August 7, 1975, the board notified the plaintiff of its denial of his application pursuant to G. L. c. 138, § 16C, based on the church's written objection. A few days later, the plaintiff appealed pursuant to G. L. c. 138, § 67, from the board's decision to the Alcoholic Beverages Control Commission (ABCC). At a hearing before the ABCC on August 28, 1975, the board introduced documents demonstrating that the church administrative board was the governing body of the church. The plaintiff presented no contrary

---

[1] The pertinent portion of c. 138, § 16C, as amended by St. 1970, c. 192, § 1, reads as follows: "Premises, except those of an innholder and except such parts of buildings as are located ten or more floors above street level, located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto . . . ."

evidence. On the same date, the ABCC affirmed the board's denial of the plaintiff's license application.

The plaintiff filed the complaint in this action on September 16, 1975, seeking judicial review pursuant to G. L. c. 30A, § 14, of the ABCC decision. Having agreed to all material facts, the parties requested that the judge reserve and report the case to the Appeals Court. The judge reported the case to the Appeals Court pursuant to G. L. c. 231, § 111. We transferred the case here on our own motion.

1. *Delegation of legislative authority.* This court has recognized as a general proposition that the Legislature cannot delegate the general power to make laws, *Corning Glass Works* v. *Ann & Hope, Inc.,* 363 Mass. 409, 420-423 (1973),[2] although it may delegate to a board or an individual officer the implementation of details of a legislative policy, so long as specific standards are supplied, *Arlington* v. *Board of Conciliation & Arbitration,* 370 Mass. 769, 775-776 (1976).[3] The plaintiff urges us to apply these basic tenets to § 16C, and to find it constitutionally defective. We decline that invitation. Rather, while affirming the principles espoused in the cases cited above, we find them inapposite to the statutory provision before us, for the reasons which follow.

Statutes regulating the sale of intoxicating liquors have been accorded exceptional treatment by the courts.[4]

---

[2] The doctrine of nondelegation derives from art. 30 of our Declaration of Rights and from Part II, c. 1, § 1, art. 4, of our Constitution. *Arlington* v. *Board of Conciliation & Arbitration,* 370 Mass. 769, 775 (1976).

[3] In *Arlington,* we upheld the constitutionality of an act authorizing the use of an arbitration panel to resolve disputes, in certain circumstances, between employee organizations representing firefighters or police officers and the employing city, town, or district. We found no improper delegation in that the neutral arbitrator/chairman, whether classified as a "public" or a "private" person, was impartial and was required to apply detailed statutory standards. We also based our holding on the extensive safeguards against arbitrary action built into the statutory scheme.

[4] The Supreme Court in *California* v. *LaRue,* 409 U.S. 109, 114

The United States Supreme Court has stated that "[w]ith-out doubt a State may absolutely prohibit the manufac-ture of intoxicants, their transportation, sale, or posses-sion, irrespective of when or where produced or obtained, or the use to which they are to be put." *Ziffrin, Inc.* v. *Reeves,* 308 U.S. 132, 138 (1939). Incident to the authority wholly to prohibit the sale of intoxicating liquors, the Legislature may permit sales subject to prescribed terms and conditions. *Connolly* v. *Alcoholic Beverages Control Comm'n,* 334 Mass. 613, 619 (1956). The Legislature has established such terms and conditions in a scheme of regulation embodied in G. L. c. 138.[5]

Section 16C of G. L. c. 138 prohibits, with stated excep-tions, the granting of a liquor license to premises located within a radius of 500 feet of a church or school if the governing body of that church or school[6] files a written objection to its issuance. It long has been acknowledged that a State, in the exercise of its expansive police powers with regard to the regulation of sales of alcoholic bever-

---

(1972), remarked that "the broad sweep of the Twenty-first Amend-ment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." See *Trustees of Mortgage Trust of America* v. *Holland,* 554 F.2d 237, 238 (5th Cir. 1977). See also *Opinion of the Justices,* 373 Mass. 888, 890-891, 893-894 (1977).

[5] Among these terms are included the prohibition of the sale of alcoholic beverages except as authorized by this chapter (§ 2), and the delegation of authority for issuance of licenses to local licensing boards in cities and towns voting to authorize sales (§ 15), subject to the prohibition of more than three licenses under the same ownership, the necessity of further approval by the ABCC (*id.*), and the imposition of license quotas (§ 17).

[6] General Laws c. 138, § 16C, defines a church and a school as fol-lows: "In this section a church shall mean a church or synagogue building dedicated to divine worship and in regular use for that pur-pose, but not a chapel occupying a minor portion of a building primar-ily devoted to other uses, and a school shall mean an elementary or secondary school, public or private, giving not less than the minimum instruction and training required by chapter seventy-one to children of compulsory school age."

ages, may enact valid laws prohibiting, without the possibility of waiver, such sales within specified distances of churches[7] and other institutions sought to be protected. See *Ford* v. *Easterling,* 183 Miss. 575 (1938); *State ex rel. Dixie Inn, Inc.* v. *Miami,* 156 Fla. 784 (1946); 45 Am. Jur. 2d Intoxicating Liquors § 140 (1969). These statutes have been upheld as rationally implementing a legislative determination that the welfare and safety of individuals attending these institutions would be served by such a zone of protection. Likewise, local zoning ordinances prohibiting the sale of intoxicating liquors within certain areas have been upheld. In *Blackman* v. *Big Sandy,* 507 F.2d 935, 936-937 (5th Cir. 1975), the court stated: "The City might be legitimately concerned about the presence of a liquor establishment and its accompanying traffic in the midst of homes, churches and a school. The Supreme Court has recently made clear that zoning decisions 'addressed to family needs' are permissible ones. 'The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion, and clean air make the area a sanctuary for people.' *Village of Belle Terre* v. *Boraas,* 416 U.S. 1, 9 [1974]."

Accepting the premise that an absolute prohibition of new liquor licenses within a certain distance of a church constitutes a valid exercise of police power,[8] we turn to the improper delegation of power claims advanced by the plaintiff. A look at § 16C in its historical context is useful here. At its inception, when § 16C was inserted by St. 1954, c. 569, § 1, it was a categorical ban akin to those discussed above: "Premises, except those of an innholder, located within five hundred feet . . . of a church or school

---

[7] What institutions qualify for consideration as churches in the context of such statutes has been a subject of frequent litigation. See 45 Am. Jur. 2d Intoxicating Liquors § 141 (1969); 59 A.L.R.2d 1439 (1958).

[8] We discuss the propriety of such a statute, and of § 16C, in the face of the First Amendment establishment of religion clause attack, *infra.*

shall not be licensed for the sale of alcoholic beverages
. . . ." Statute 1968, c. 435, modified the absolute proscrip-
tion by permitting licenses within the 500-foot radius "if
the governing body of such church or school assents in
writing." Finally, St. 1970, c. 192, § 1, substituted the
present language which essentially shifts the burden of
formal objection to the church or school, and relieves the
applicant of the duty to gain assent.[9]

The history of the statute demonstrates a progressive
relaxation of licensing limitations against a backdrop of
a legislative option of total prohibition. While seeking in
part to facilitate the granting of licenses, the Legislature
chose also to preserve, where appropriate, its legitimate
police power objective of providing a zone of protection.
The power to effectuate this goal is delegated, in part,[10]
to churches located within 500 feet of the premises pro-
posed to be licensed. As we pointed out in *Connolly* v.
*Alcoholic Beverages Control Comm'n*, supra at 619, "[i]n
dealing with a trade, which, because of its great potential
evils, can be wholly prohibited, a wide power is given to
the Legislature with respect to the delegation of discre-
tionary powers" (no invalid delegation of authority to the
ABCC in leaving to it the power to approve or disapprove
license applicants who had been approved by the local
board.)[11] The authority delegated need not vest exclusive-

---

[9] See Governor's letter, 1970 House Doc. No. 5212.

[10] The local licensing board and the ABCC both retain the authority
to deny a license within the 500-foot radius even if the church chooses
not to object. See, e.g., G. L. c. 138, §§ 12, 15.

[11] See *Butler* v. *East Bridgewater*, 330 Mass. 33, 37 (1953), where an
enabling act permitted either local prohibition or regulation of the
removal of soil from land not in public use. The town decided to
"regulate" by issuing permits, and invested in the selectmen quasi
judicial authority, without explicit standards, to pass on the applica-
tion. We held that the delegation was permissible and that "this case
is to be distinguished from cases where an attempt has been made to
delegate to some official what practically amounts to the unrestrained
power of life or death over the right to engage in some lawful, useful,
and generally harmless occupation not otherwise prohibited."

ly in public bodies in order to pass constitutional muster. Indeed, statutes making the granting of a liquor license conditional on the consent of, or the absence of an objection by, residents or property owners within a certain area in which the proposed establishment is to be operated have been uniformly upheld. See *Beacon Liquors* v. *Martin*, 279 Ky. 468 (1939); 45 Am. Jur. 2d Intoxicating Liquors § 156 (1969). Likewise, the Legislature's delegation in § 16C of a veto power to the institutions most directly representing the interests it seeks to protect falls within permissible constitutional limits.

Reference to the case of *Cusack Co.* v. *Chicago*, 242 U.S. 526 (1917), and its progeny,[12] is especially instructive. In *Cusack*, an ordinance which prohibited specific uses, but permitted waiver of the restrictions with the consent of a majority of the parties most affected, survived a claim of invalid delegation of legislative power. The distilled essence of *Cusack*, as construed in the majority of cases, is that if the effect of a consent provision is to legislate a restriction it is invalid,[13] but if it serves merely to permit the waiver of a restriction created by the legislative body, which has provided for such a waiver, it is upheld. See *O'Brien* v. *St. Paul*, 285 Minn. 378 (1969); *Robwood Advertising Assocs.* v. *Nashua*, 102 N.H. 215 (1959); 21 A.L.R.2d 551 (1952).[14] We regard the current § 16C as falling within

---

[12] See, e.g., *Nortown Theatre Inc.* v. *Gribbs*, 373 F. Supp. 363 (E.D. Mich. 1974), aff'd on other grounds sub nom. *Young* v. *American Mini Theatres, Inc.*, 427 U.S. 50 (1976); *Inspector of Bldgs. of Lowell* v. *Stoklosa*, 250 Mass. 52 (1924); *Cross* v. *Bilett*, 122 Colo. 278 (1950); *State ex rel. Standard Oil Co.* v. *Combs*, 129 Ohio St. 251 (1935).

[13] See *Eubank* v. *Richmond*, 226 U.S. 137 (1912).

[14] See also *New Motor Vehicle Bd. of Cal.* v. *Orrin W. Fox Co.*, 439 U.S. 96 (1978), a decision of the United States Supreme Court handed down after oral argument in the instant case. In that case, the statutory right of an existing retail motor vehicle franchisee to protest the establishment of a competing dealership was upheld in the face of an attack alleging, inter alia, deprivation of due process and impermissible delegation of State power to private citizens. The exercise of the right described had the effect of automatically triggering a prohibition

the latter category. Clearly, the 1968 version, which prohibited licensing within the 500-foot radius but provided for written waiver by the church, landed squarely within the ambit of the *Cusack* rule. The 1970 amendment created no material distinction for the purpose of analyzing the delegation issue. The current provision does not invest the church with a new, expanded power to legislate a prohibition. It merely shifts to the church the burden of objecting, while retaining the essential legislative mandate that no license be granted within the protected area in the face of a nonconsenting church.

We hold, therefore, that § 16C does not affront the Massachusetts Constitution. As a corollary, we hold that it comports with the due process clause of the Fourteenth Amendment to the Federal Constitution, contrary to the assertions of the plaintiff. Due process does not require, as the plaintiff suggests, the promulgation of an elaborate scheme of standards governing decision making by the church. As an institution representing interests benefited by a valid police power protection, the church may waive that protection or not, in its discretion, without running afoul of the due process clause. Cf. *Nortown Theatre Inc.* v. *Gribbs*, 373 F. Supp. 363 (E.D. Mich. 1974), aff'd on other grounds sub nom. *Young* v. *American Mini Theatres, Inc.*, 427 U.S. 50 (1976). What due process does require, however, and what is available by statute,[15] is the opportunity for a hearing with respect to such questions as whether the objecting institution qualifies as a "church" for the purposes of the statute, whether it is within the statutorily protected zone of 500 feet, and whether the written objection was duly authorized by the appropriate "governing body" of the church.[16] As to ques-

of the proposed dealership until the New Motor Vehicle Board gives a hearing as to whether or not it ought to be permitted.

[15] See G. L. c. 138, §§ 15, 15A, 67, and G. L. c. 30A, § 14.

[16] See generally G. L. c. 67. These questions are not in issue in this proceeding as the plaintiff does not contest that the written objection filed was authorized by the governing body of a church within 500 feet of the locus.

tions such as these, an initial hearing and adequate opportunity for administrative and judicial review are available.

2. *The First Amendment establishment of religion clause.* The plaintiff also urges us to invalidate § 16C on the alternative ground that it violates the establishment of religion clause of the First Amendment to the United States Constitution.[17] While we recognize that the plaintiff raises an issue which falls within an "extraordinarily sensitive area of constitutional law,"[18] we also note that the "hermetic separation"[19] of church and State is an impossibility which the Constitution has never required. The test which § 16C must pass is set forth in *Wolman* v. *Walter*, 433 U.S. 229, 236 (1977): "In order to pass muster, a statute must have a secular legislative purpose, must have a principal or primary effect that neither advances nor inhibits religion, and must not foster an excessive government entanglement with religion." Section 16C withstands scrutiny with respect to each consideration.

As we have discussed earlier in this opinion, the provision for a zone of protection from liquor establishments sought to be licensed within a given radius of a church or a school is a valid exercise of police power,[20] in that it seeks to safeguard the health and welfare of persons attending religious and nonreligious activities at such places. While § 16C does provide special protection for churches and schools,[21] we view its purpose as secular,

---

[17] The clause states: "Congress shall make no law respecting an establishment of religion . . . ." It has been held to be applicable to the States through the Fourteenth Amendment. *Engel* v. *Vitale*, 370 U.S. 421 (1962).

[18] *Lemon* v. *Kurtzman*, 403 U.S. 602, 612 (1971).

[19] *Roemer* v. *Board of Pub. Works of Maryland*, 426 U.S. 736, 746 (1976).

[20] See discussion *supra* at 87-89. See also *Horne* v. *Hernando County*, 297 S.2d 606, 607 (Fla. Dist. Ct. App. 1974).

[21] The Legislature, in its judgment, may extend this benefit on a selective basis. *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 433-434

and its principal effect as neither sponsorship of nor hostility toward religion. The United States Supreme Court has upheld in the face of establishment clause attacks: a statute granting a property tax exemption to religious organizations, along with other cultural and charitable groups, *Walz* v. *Tax Comm'n of the City of N.Y.*, 397 U.S. 664 (1970); Maryland's Sunday closing laws, *McGowan* v. *Maryland*, 366 U.S. 420 (1961); and State reimbursement of transportation costs to parents of parochial school students, even though the children might not have attended the church-affiliated school in the absence of the public program, *Everson* v. *Board of Educ. of Ewing*, 330 U.S. 1 (1947). Just as these and other Supreme Court cases indicate tolerance of the incidental benefits which religious institutions reap by virtue of programs generated from secular concerns, so do we find acceptable both the goals and effects of § 16C.[22]

Finally, we find that while § 16C inevitably occasions some degree of State involvement with religion, that involvement does not rise to the level of "excessive entanglement." The governing body of a church may file an objection to the granting of a license, and that objection is subject to limited scrutiny.[23] The State-church interac-

---

(1977). Cf. *Williamson* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).

[22] See *Wiles* v. *Michigan Liquor Control Comm'n*, 59 Mich. App. 321 (1975), upholding in the face of an establishment clause attack a statute essentially identical to G. L. c. 138, § 16C. The court acknowledged there that the church derived no economic benefit from the rule, and that the statute neither encouraged nor discouraged people from attending religious services. Even if we were to find that the application of § 16C had the subsidiary effect of fostering increased participation in church activities such an effect would fall within the boundaries, albeit shifting and not fully explored, which the First Amendment prescribes. Cf. *Bloom* v. *School Comm. of Springfield*, 376 Mass. 35 (1978).

[23] See discussion *supra* at 90.

tion engendered by these restricted procedures represents far less involvement than that created by the "sustained and detailed administrative relationships for enforcement of statutory or administrative standards" which the Supreme Court regards so warily.[24]

For the reasons stated, we uphold the validity under both the Massachusetts and United States Constitutions of that portion of G. L. c. 138, § 16C, challenged here. The case is remanded to the Superior Court for entry of judgment in accordance with this opinion.

*So ordered.*

[24] *Walz* v. *Tax Comm'n of the City of N.Y.*, 397 U.S. 664, 675 (1970). See *Lemon* v. *Kurtzman*, 403 U.S. 602 (1971) (ongoing State surveillance of subsidized "secular" classes to assure nonreligious content, and State inspection of parochial school records in order to evaluate the amounts allocated to secular education contrasted with religious activity, found excessively entangling).