Edward A. FARRIS, Commissioner,
Division of Alcoholic Beverage
Control, et al., Appellants,

v.

MINIT MART FOODS, INC. NO.
37, Appellee.

Supreme Court of Kentucky.

Dec. 20, 1984.

Petition for Modification Denied
Feb. 28, 1985.

Catherine C. Staib, Frankfort, for appellants.

William A. Young, Larry Cleveland, Greenebaum, Young, Treitz & Maggiolo, Frankfort, for appellee.

OPINION OF THE COURT.

An application for a retail beer license was filed with the Department of Alcoholic Beverage Control by Minit Mart Foods, Inc., which is located approximately 91 feet from the Church of God, Lawrenceburg, Kentucky. The church filed a protest with the Department of Alcoholic Beverage Control within the ten-day limit imposed by KRS 243.220(3)(a), and based solely upon the protest filed by the church, the request for the license was denied. On appeal, the Board upheld the Administrator's refusal citing KRS 243.220(3)(a). Minit Mart appealed to the Franklin Circuit Court which entered a summary judgment for Minit Mart, ruling that KRS 243.220(3), as it relates to churches, is unconstitutional under the United States Supreme Court decision in *Larkin v. Grendel's Den*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982). Appeal was taken to the Court of Appeals, and because of the statewide importance of the issue, this court granted transfer.

In *Larkin* the United States Supreme Court found the Massachusetts statute (similar to KRS 243.220) to be in violation of the Establishment Clause of the First Amendment to the United States Constitution. Section 16C of Chapter 138 of the Massachusetts General Laws provided:

> Premises ... located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto.

The United States Supreme Court premised its review of the statute on the grounds the Massachusetts Supreme Judicial Court ruled that the Massachusetts legislature had delegated its decision making power to nongovernmental entities even though the Massachusetts Court ruled it was not an unconstitutional delegation of authority. The Supreme Court stated in *Larkin:*

> Plainly schools and churches have a valid interest in being insulated from certain kinds of commercial establishments, including those dispensing liquor. Zoning laws have long been employed to this end, and there can be little doubt about the power of a state to regulate the environment in the vicinity of schools, churches, hospitals and the like by exercise of reasonable zoning laws. . . .

> The zoning function is traditionally a governmental task requiring the 'balancing [of] numerous competing considerations,' and courts should properly 'refrain from reviewing the merits of [such] decisions, absent a showing of arbitrariness or irrationality.' (Citations omitted). Given the broad powers of states under the Twenty-First Amendment, judicial deference to the legislative exercise of zoning powers by a city council or other legislative zoning body is especially appropriate in the area of liquor regulation. (Citations omitted).

> However, Sec. 16C is not simply a legislative exercise of zoning power. As the Massachusetts Supreme Judicial Court concluded, Sec. 16C delegates to private, nongovernmental entities power to veto certain liquor license applications, *Arno v. Alcoholic Beverages Control Commission, supra,* 377 Mass. [83] at 89 [384 N.E.2d 1223 (1979)]. This is a power ordinarily vested in agencies of government. See, e.g., *California v. Larue, supra,* 409 U.S. [109], at 116 [93 S.Ct. 390, at 396, 34 L.Ed.2d 342 (1972)], commenting that a 'state agency . . . is itself the repository of the State's power under the Twenty-First Amendment.' . . . [H]ere, of two classes of institutions to which the legislature has delegated this important decisionmaking power, one is secular, but one is religious. Under these circumstances, the deference normally due a legislative zoning judgment is not merited.

This court addressed the issue of whether the legislature improperly delegated its authority in an earlier version of KRS 243.220(3), but it did not address the Establishment Clause issue. In *Beacon Liquors v. Martin,* 279 Ky. 468, 131 S.W.2d 446 (1939), we stated:

> Appellant next contends that the Act by permitting churches, schools, and hospitals to give their written consent for a liquor outlet to be established on the same street, or avenue, and with 200 feet of such institutions, amounts to a delegation of power given them by the Legislature. On this subject, 15 R.C.L. 304, says: Provisions for consent to, or remonstrance against, licenses, by residents or property owners within a certain area in which the proposed saloon is to be operated, bears something of a resemblance of local option legislation and have been uniformly upheld. Such a provision does not unlawfully delegate power to grant licenses, or make an arbitrary or unjust discrimination between applicants nor is it objectionable as conferring arbitrary powers on property owners.' *id,* 131 S.W.2d at 450.

This court acknowledges that KRS 243.220(3) is on its face constitutionally indistinguishable from the Massachusetts statute. KRS 243.220(3)(a) states in pertinent part:

> Except as provided in paragraphs (b) and (c) of this subsection, no license for the sale of alcoholic beverages at retail shall be issued for any premises that are located within two hundred (200) feet of a building used primarily as a church or for classrooms of a school, if the governing authority of the church or school, within ten (10) days after receiving notice of the application for the license, files written protest with the state administrator against the issuance of the license . . .

The issue before this court is the applicability of *Larkin* to KRS 243.220(3) in the context of this court's previous ruling that a similar statute did not delegate legislative authority to a nongovernmental entity. Coextensive with this issue is whether this court's decision in *Beacon Liquors v. Martin, supra,* will insulate KRS 243.220(3) from the assault of *Larkin.*

It is argued that the United States Supreme Court in *Larkin* conclusively relied upon the Massachusetts Supreme Judicial Court's holding that Sec. 16C delegated veto power to a nongovernmental entity, and certain statements in *Larkin* may cause some to think that *Larkin* is based solely upon that finding. If this were so, it would then be a simple task to ignore the holding of *Larkin* since our holding in *Beacon Liquors* that a statute similar to 16C was not an unlawful delegation of power.[1] Unfortunately the United States Supreme Court in *Larkin* does not leave us with this simple solution since they go on at great length to make an independent analysis as to whether a statute of this import (either Sec. 16C of Chapter 138 of the Massachusetts General Laws or KRS 243.220(2) violates the establishment clause of the First Amendment and in furtherance of this discussion, states 459 U.S. at page 122–27, 103 S.Ct. at page 510–512 as follows:

The purposes of the First Amendment guarantees relating to religion were twofold: to foreclose state interference with the practice of religious faiths, and to foreclose the establishment of a state religion familiar in other Eighteenth Century systems. Religion and government, each insulated from the other, could then coexist. Jefferson's idea of a 'wall,' see *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 164 [25 L.Ed. 244] (1878), *quoting* Reply from Thomas Jefferson to an address by a committee of the Danbury

Baptist Association (January 1, 1802), *reprinted in* 8 Works of Thomas Jefferson 113 (Washington ed. 1861), was a useful figurative illustration to emphasize the concept of separateness. Some limited and incidental entanglement between church and state authority is inevitable in a complex modern society, see, *e.g., Lemon v. Kurtzman,* 403 U.S. 602, 614 [91 S.Ct. 2105, 2112, 29 L.Ed.2d 745] (1971); *Walz v. Tax Commission,* 397 U.S. 664, 670 [90 S.Ct. 1409, 1412, 25 L.Ed.2d 697] (1970), but the concept of a 'wall' of separation is a useful signpost. Here that 'wall' is substantially breached by vesting discretionary governmental powers in religious bodies.

This Court has consistently held that a statute must satisfy three criteria to pass muster under the Establishment Clause:

First, the statute must have a Secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster 'an excessive government entanglement with religion.'

*Lemon v. Kurtzman, supra,* 403 U.S., at 612–613 [91 S.Ct., at 2111], *quoting Waltz v. Tax Commission, supra,* 397 U.S., at 674 [90 S.Ct., at 1414]. See also *Widmar v. Vincent,* 454 U.S. 263, 271 [102 S.Ct. 269, 275, 70 L.Ed.2d 440] (1981); *Wolman v. Walter,* 433 U.S. 229, 236 [97 S.Ct. 2593, 2599, 53 L.Ed.2d 714] (1977). Independent of the first of those criteria, the statute, by delegating a governmental power to religious institutions, inescapable implicates the Establishment Clause.

The purpose of Sec. 16C, as described by the District Court, is to 'protect [ ] spiritual, cultural, and educational cen-

---

1. The Supreme Judicial Court of Massachusetts in *Arno v. Alcoholic Beverages Control Com'n,* 377 Mass. 83, 384 N.E.2d 1223, states 384 N.E.2d at page 1227 that, "... the Legislature's delegation in Sec. 16C of a veto power to the institutions most directly representing the interests it seeks to protect falls within permissable constitutional limits." This statement validates the notion that they did in fact recognize Sec. 16C as delegating veto power to the churches. However, they then continued their analysis and concluded that it was not an unlawful delegation of power and cited *Beacon Liquors v. Martin,* 279 Ky. 468, 131 S.W.2d 446 (1939) as authority for that proposition.

ters from the "hurly-burly" associated with liquor outlets.' [*Grendel's Den, Inc. v. Goodwin*] 495 F.Supp. [761], at 766 [ (1980) ]. There can be little doubt that this embraces valid secular legislative purposes. However, these valid secular objectives can be readily accomplished by other means—either through an absolute legislative ban on liquor outlets within reasonable prescribed distances from churches, schools, hospitals and like institutions,' or by ensuring a hearing for the views of affected institutions at licensing proceedings where, without question, such views would be entitled to substantial weight.

Appellants argue that Sec. 16C has only a remote and incidental effect on the advancement of religion. The highest court in Massachusetts, however, has construed the statute as conferring upon churches a veto power over governmental licensing authority. Section 16C gives churches the right to determine whether a particular applicant will be granted a liquor license, or even which one of several competing applicants will receive a license.

The churches' power under the statute is standardless, calling for no reasons, findings, or reasoned conclusions. That power may therefore be used by churches to promote goals beyond insulating the church from undesirable neighbors; it could be employed for explicitly religious goals, for example, favoring liquor licenses for members of that congregation or adherents of that faith. We can assume that churches would act in good faith in their exercise of the statutory power, see *Lemon v. Kurtzman, supra,* 403 U.S. at 618–619 [91 S.Ct. at 2113–2114], yet Sec. 16C does not by its terms require that churches' power be used in a religiously neutral way. '[T]he potential for conflict inheres in the situation,' *Levitt v. Committee for Public Education,* 413 U.S. 472, 480 [93 S.Ct. 2814, 2819, 37 L.Ed.2d 736] (1973); and appellants have not suggested any 'effective means of guaranteeing' that the delegated power 'will be used exclusively

for secular, neutral, and nonideological purposes.' *Committee for Public Education v. Nyquist, supra,* 413 U.S. [756], at 780 [93 S.Ct. 2955 at 2969, 37 L.Ed.2d 948 (1973) ]. In addition, the mere appearance of a joint exercise of legislative authority by Church and State provides a significant symbolic benefit to religion in the minds of some by reason of the power conferred. It does not strain our prior holdings to say that the statute can be seen as having a 'primary' and 'principal' effect of advancing religion.

Turning to the third phase of the inquiry called for by *Lemon v. Kurtzman, supra,* we see that we have not previously had occasion to consider the entanglement implications of a statute vesting significant governmental authority in churches. This statute enmeshes churches in the exercise of substantial governmental powers contrary to our consistent interpretation of the Establishment Clause; '[t]he objective is to prevent, as far as possible, the intrusion of either [Church or State] into the precincts of the other.' *Lemon v. Kurtzman, supra,* 403 U.S., at 614 [91 S.Ct., at 2112]. We went on in that case to state:

Under our system the choice has been made that government is to be entirely excluded from the area of religious instruction *and churches excluded from the affairs of government.* The Constitution decrees that religion must be a private matter for the individual, the family, and the institutions of private choice, and that while some involvement and entanglement are inevitable, lines must be drawn.

403 U.S., at 625 [91 S.Ct., at 2117] (emphases added).

Our contemporary views do no more than reflect views approved by the Court more than a century ago:

The structure of our government has, for the preservation of civil liberty, rescued the temporal institutions from religious interference. On the other hand, it has secured religious

liberty from the invasion of the civil authority.

*Watson v. Jones,* 80 U.S. (13 Wall.) 679, 730 [20 L.Ed. 666] (1871), quoting *Harmon v. Dreher,* 2 Speer's Equity Reports 87, 120 (S.C.Ct.App.1843).

As these and other cases make clear, the core rationale underlying the Establishment Clause is preventing, 'a fusion of governmental and religious functions.' *School District of Abington Township v. Schempp,* 374 U.S. 203, 222 [83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1963) ]; *Watz v. Tax Commission, supra,* 397 U.S. [664] at 674–75 [90 S.Ct. 1409, 1414, 25 L.Ed.2d 697]; *Everson v. Board of Education,* 330 U.S. 1, 8–13 [67 S.Ct. 504, 507–510, 91 L.Ed. 711] (1947). The Framers did not set up a system of government in which important, discretionary governmental powers would be delegated to or shared with religious institutions.

Section 16C substitutes the unilateral and absolute power of a church for the reasoned decision-making of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications. The challenged statute thus enmeshes churches in the processes of government and creates the danger of '[p]olitical fragmentation and divisiveness along religious lines,' *Lemon v. Kurtzman, supra,* 403 U.S., at 623 [91 S.Ct. at 2116]. Ordinary human experience and a long line of cases teach that few entanglements could be more offensive to the spirit of the Constitution.

From the foregoing language of *Larkin* we must conclude that our interpretation of KRS 243.220 in *Beacon Liquors* is invalid and because of the synonymous nature of KRS 243.220(3) to Sec. 16C of Chapter 138 of the Massachusetts General Laws and the analysis of *Larkin,* KRS 243.220(3) is unconstitutional as being in violation of the Establishment Clause of the First Amendment. Had the statute in question included standards for application *or* provided for an absolute ban, the result may have been different.

The desirability of this result is certainly to be questioned, but we are compelled to follow *Larkin.*

The judgment of the Franklin Circuit Court is affirmed.

STEPHENS, C.J., and AKER, GANT and LEIBSON, JJ., concur.

STEPHENSON, VANCE and WINTERSHEIMER, JJ., dissent.

WINTERSHEIMER, J., files a dissenting opinion in which STEPHENSON, J., joins.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from the majority opinion because I do not believe the case of *Larkin* has any application to the Kentucky statute as interpreted by the Kentucky Supreme Court in *Beacon, supra.*

KRS 243.220(3) has been the law of the Commonwealth for many years. The Federal case, *Larkin,* in which a 500-foot rule in Massachusetts was found to be in violation of the Establishment Clause of the First Amendment of the United States Constitution, does not apply to the Kentucky situation. In *Larkin,* a majority of the U.S. Supreme Court specifically stated that it was expressing an opinion only as to the constitutionality of the Massachusetts statute. The Federal Supreme Court relies on the construction of Massachusetts law by the highest court in that state as giving churches veto power over licensed liquor premises. This construction has not been placed on KRS 243.220(3). In 1939, this Court ruled that there was no delegation under the Kentucky system. *Beacon, supra.*

It is my opinion that the Kentucky General Assembly has the right to properly exercise police powers and if it chooses, create a zone free from alcoholic beverages to continue to exist around church buildings where they are so desired. The free-zone created by the Kentucky law permits a happy compromise between those who wish to purchase alcohol and those who do

not desire to have it within a specified area near their churches. In addition, it gives the opportunity and the local option to those churches who do not object to a liquor establishment or who wish to hold a retail alcoholic beverage license on their own premises. The Kentucky law is clearly a live-and-let-live arrangement that does not interfere unnecessarily with anyone's rights. In this case the church was established in the community before the intrusion of the liquor dispensary as an addition to a convenience store.

In *Larkin,* the United States Supreme Court builds a wall of separation between church and state much higher than had ever been contemplated by the simple language of the First Amendment.

The wall of separation should not become a spite fence. We have frequently heard the expression that we should render to Caesar or the State the things that are Caesar's and to God the things that are God's. Separation should not bring division. Both the State and the Church were established to serve people and not to oppress them, or to conflict with each other. Jefferson said that no man should suffer because of his religious beliefs. The law and our constitutional system cannot be bias in such matters. It must be a civil means for providing liberty within the framework of the law.

Liberty is a two-way street. Some need the convenience of a liquor dispensary while others do not. It is simply a matter of taste. The law should not be invoked unless there is a fundamental right at issue. Here the true purpose of the law is to preserve the right to be left alone, a basic right of privacy.

Any liquor store is a government-controlled business function. A total ban on such establishments might pass technical constitutional muster, but it would unduly harass those individuals who might be welcomed into an area by their neighbors. Extremes should always be avoided. The Kentucky practice of local option in such a sensitive matter presents a reasonable compromise which has stood the test of time

and the legal challenge. It should be continued.

It is my opinion that Kentucky law does not require the result reached by the majority.

STEPHENSON, J., joins in this dissent.