**ESPRESSO, INC., t/a Park Cafe, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civ. A. No. 95–0659 (JHG).

United States District Court, District of Columbia.

May 2, 1995.

Neal Goldfarb, Ingersoll & Bloch, Chartered, Washington, DC, for plaintiff.

Marceline Alexander, Office of Corp. Counsel, D.C., Washington, DC, for District

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Having had its application for a liquor license denied by the District of Columbia Alcoholic Beverage Control Board ("Board") solely on the basis of a religious objection filed by the Lincoln Park United Methodist Church ("Church"), plaintiff, Espresso, Inc., t/a Park Cafe ("Espresso"), initiated this action against defendants, the District of Columbia ("District") and the Board, pursuant to 42 U.S.C. § 1983. Plaintiff asserts that 27 D.C.M.R. § 302, which, *inter alia*, prohibits the Board from considering a liquor license application made by an enterprise located within 400 feet of a church with 100 or more members, absent the consent of the church, violates the Establishment Clause of the First Amendment to the United States Constitution.

With the parties' consent, plaintiff's request for a preliminary injunction was converted to a motion for a permanent injunction. Oral argument was heard on April 28, 1995 on this motion and on defendants' motion to dismiss. For the reasons expressed below, plaintiff's motion for a permanent injunction is granted and defendants' motion to dismiss is denied.

### I. *Background* [1]

Espresso operates a restaurant known as the Park Cafe, located at 106 13th Street, S.E., in the District of Columbia. The Park Cafe is prohibited from selling any alcoholic beverages because it does not have a liquor license. On or about August 4, 1994, Espresso applied for a Class CR liquor license, which would permit it to sell alcoholic beverages with meals at the Park Cafe.

The District has a municipal regulation with regard to liquor license applications that provides, in pertinent part:

1. The parties stipulated to the facts.

2. The exceptions are for the following types of licenses:
   (a) A Retailer's License Class CH, CX, DH or DX issued for a *bona fide* club or hotel;

### LICENSES NEAR SCHOOLS, COLLEGES, UNIVERSITIES, CHURCHES AND RECREATION AREAS

302.1 Except as otherwise provided in this section, no license shall be issued for any establishment within four hundred feet (400′) of any public, private, or parochial primary, elementary, or high school; college or university; church; or recreation area operated by the D.C. Department of Recreation, [with certain exceptions not relevant here [2]]

\*    \*    \*    \*    \*    \*

302.5 A license may be issued, in the discretion of the Board, for a place of business located within four hundred feet (400′) of a church if one of the following conditions is met:

(a) The Board is satisfied that the church has an enrolled membership of less than one hundred (100) persons; or

(b) The church has one hundred (100) or more members, but the Board is satisfied that the church does not object to the granting of the license, as evidenced by a written statement to the Board from the proper governing body of the church.

302.6 A license may be issued for any place within the prohibited distance if, at the time the church, school, college, or university established its location, there was within four hundred [feet] (400′) of the church, school, college, or university, a place of business holding a license of the same class as that applied for.

D.C.M.R. § 302.

The Pastor of the Church, Dr. Kenneth H. Greene, submitted a letter to the Board regarding Espresso's application for a license to sell liquor with meals at the Park Cafe. This letter stated, in its entirety: "With respect to the above application, our objection

(b) A Retailer's License Class E;
(c) A Retailer's License Class F; or
(d) A Retailer's License Class G.
27 D.C.M.R. § 302.1.

to the granting of the license is only for religious reasons." Stipulation, Exhibit A.

On February 1, 1995, the Board issued an Order Denying Application for a License. The Board found that the Church had an enrolled membership of more than 100 persons and was located within 400 feet of the Park Cafe. Stipulation, Exhibit B at 1. The Board further found that there were no licensed establishments within 400 feet of the Church when the Church first occupied its premises and that the Church's objection was timely filed. *Id.*

Based upon these findings, the Board concluded that 27 D.C.M.R. § 302.5 mandated that the application be denied. The Board noted that Espresso asserted that 27 D.C.M.R. § 302.5 violated the First Amendment to the United States Constitution, but did not have jurisdiction to determine the issue of constitutionality. *Id.* at 2.

This lawsuit ensued. Plaintiff seeks to have defendants enjoined from enforcing 27 D.C.M.R. § 302.5 and ordered to process Espresso's application despite the absence of consent from the Church. Plaintiff does *not* seek to have this Court usurp the discretion afforded the Board in performing its licensing function, but merely seeks to have the Board ordered to exercise that discretion. Similarly, plaintiff does *not* challenge the entire regulation; it but merely focuses on the power given to churches.[3]

## II. *Discussion*

Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof.

U.S. Const., Amend. 1. The deliberate ambiguity of this relatively simple pronouncement, which applies with equal vigor to the states and the District of Columbia[4], has prohibited the formulation of many principles of general applicability. *See Walz v. Tax*

*Comm'n*, 397 U.S. 664, 668–69, 90 S.Ct. 1409, 1411–12, 25 L.Ed.2d 697 (1970) ("the purpose [of the Religion Clauses] was to state an objective not to write a statute"). Indeed, the only principle deducible from the myriad precedent on the Religion Clauses is that government must " 'pursue a course of 'neutrality' toward religion, . . . favoring neither one religion over others nor religious adherents collectively over nonadherents.' " *Board of Educ. v. Grumet*, — U.S. —, —, 114 S.Ct. 2481, 2487, 129 L.Ed.2d 546 (1994) (quoting *Committee for Public Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 792–93, 93 S.Ct. 2955, 2975, 37 L.Ed.2d 948 (1973)); *see Walz*, 397 U.S. at 669–70, 90 S.Ct. at 1411–12.

The Supreme Court has long recognized, however, that the government's course of "neutrality" does not require absolute separation of church and state. *See, e.g., Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971) ("Our prior holdings do not call for total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable."). Rather, "[t]he objective is to prevent, as far as possible, the intrusion of either [Church or State] into the precincts of the other." *Id.* at 614, 91 S.Ct. at 2112. A court presented with an Establishment Clause challenge, therefore, is faced with the difficult task of determining whether the provision at issue crosses the elusive line that separates "the limited and incidental entanglement between church and state [that] is inevitable in a complex modern society", *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 123, 103 S.Ct. 505, 510, 74 L.Ed.2d 297 (1982), from the impermissible establishment of religion. *Lemon*, 403 U.S. at 614–15, 91 S.Ct. at 2112; *see Board of Educ. v. Grumet*, — U.S. at —, 114 S.Ct. at 2494 (a court must endeavor to determine whether

---

3. The enticing question of the constitutionality of this provision as it pertains to parochial schools remains for another day.

4. *E.g., Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940) ("The First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof.

The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws"); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972) (The First Amendment [is] . . . applicable to the States by reason of the Fourteenth Amendment"); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

a statute or regulation "crosses the line from permissible accommodation to impermissible establishment.").

Plaintiff claims that 27 D.C.M.R. § 302 crosses this elusive line in two respects. First, relying on *Grendel's Den,* plaintiff claims that the District has impermissibly given governmental authority to religious organizations by permitting churches to have an authoritative say in evaluating a liquor license application. 459 U.S. at 127, 103 S.Ct. at 512. Second, plaintiff asserts that the provision of the regulation that distinguishes between churches based on the size of their membership unconstitutionally discriminates between different religions in violation of the principles enunciated in *Larson v. Valente,* 456 U.S. 228, 244, 102 S.Ct. 1673, 1683, 72 L.Ed.2d 33 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another"); *see also Everson v. Board of Educ.,* 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947).

In *Grendel's Den,* the Supreme Court of the United States had to determine the constitutionality of the following Massachusetts statute: "Premises ... located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto." 459 U.S. at 117, 103 S.Ct. at 507.[5] The statute was "not simply a legislative exercise of zoning power" as the state claimed. 459 U.S. at 122, 103 S.Ct. at 509–10. Indeed, "by delegating a governmental power to religious institutions, [the statute] inescapably implicates the Establishment Clause." *Id.* at 123, 103 S.Ct. at 510.[6]

The Court, therefore, analyzed the Massachusetts statute under the three-prong test established under the Establishment Clause:

First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster an "excessive government entanglement with religion."

*Id.* (quoting *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111 (quoting *Walz v. Tax Comm'n,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970))). The statute failed the second and third prongs of this test.[7]

With regard to the second prong, the statute did not require a church to provide any "reasons, findings, or reasoned conclusions". *Id.* at 125, 103 S.Ct. at 511. This "standardless" grant of authority did not provide any "'effective means of guaranteeing' that the delegated power 'will be used exclusively for secular, neutral, and nonideological purposes.'" *Id.* (quoting *Committee for Public Educ. & Religious Liberty,* 413 U.S. at 780, 93 S.Ct. at 2969). The Court further emphasized the "symbolic benefit to religion" of "the mere appearance of a joint exercise of legislative authority by Church and State". *Id.* at 125–26, 103 S.Ct. at 511. For both of these reasons, the Court concluded that the "primary" or "principal" effect of the statute was to advance religion. *Id.* at 126, 103 S.Ct. at 511–12.

The third prong of the *Lemon* test was equally violated. The statute "substitutes the unilateral and absolute power of a church for the reasoned decisionmaking of a public legislative body acting on evidence and guided by standards, on issues with significant economic and political implications." *Id.* at 127, 103 S.Ct. at 512. Because "the Framers did not set up a system of government in

---

5. The case paralleled a state court case regarding the same statute. In *Arno v. Alcoholic Beverages Control Commission,* 377 Mass. 83, 384 N.E.2d 1223 (1979), the Massachusetts Supreme Judicial Court characterized the statute "as delegating a 'veto power' to the specified institutions, ... but upheld the statute against Due Process and Establishment Clause challenges." *Grendel's Den,* 459 U.S. at 118–19, 103 S.Ct. at 508 (quoting *Arno,* 384 N.E.2d at 1227).

6. It is for similar reasons that the Court cannot accept defendants' argument that 27 D.C.M.R. § 302.5 is merely a zoning ordinance or rely on the due process analysis defendants advance.

7. It is unclear whether the statute would have failed the first prong as well. Facially, the statute had a secular purpose, but the Court noted that the statute may not achieve its purpose and could have accomplished its goal through other means. *See Grendel's Den,* 459 U.S. at 123–24, 123 n. 6, 103 S.Ct. at 510–11, 510 n. 6.

which important discretionary governmental powers would be delegated to or shared with religious institutions", the statute resulted in an excessive entanglement between church and state. *Id.*

■ It appears obvious that the District regulation equally offends the Establishment Clause. In its attempt to prevent the Court from reaching this conclusion, defendants focus on a distinction between the language of the District of Columbia regulation and the Massachusetts statute at issue in *Grendel's Den.*[8] The relevant part of the Massachusetts statute permitted a liquor license application to be considered *unless* the church *objected.* The pertinent part of the District of Columbia regulation, in contrast, states that an application for a liquor license must be denied *unless* the church *consents.* In short, it is defendants' position that the fact that the Massachusetts statute presumed that an application could proceed absent a challenge from the church, while the District of Columbia regulation mandates denial of an application absent consent of the church, is a constitutionally significant distinction.

This distinction is without merit for two reasons. First, in practice, the District of Columbia regulation operates exactly like the Massachusetts statute. The Board itself interprets the requirements of 27 D.C.M.R. § 302.5 as follows:

*Under 27 DCMR Section 302.5, ... the Board may issue a license to an establishment within 400 feet of a church if ... there is no objection from the church.*

Stipulation, Exhibit B (emphasis added). The Board does not, as the statute requires, consider the regulation to provide an absolute prohibition on liquor licenses within 400 feet of a church absent the consent of the church. Notably, in this case, the Church filed an "objection"; it did not note an absence of consent. Stipulation, Exhibit A.

*Grendel's Den,* therefore, mandates that the District regulation be invalidated.

Second, even were the D.C. regulation applied in accordance with its terms, it would still violate the Establishment Clause. The District has delegated to (or, at a minimum, shared with) a religious entity an important governmental function. The Board is prohibited from exercising its discretion over any application that does not pass through the filter of the church. There is no guarantee—indeed, not even a requirement—that the delegated power will be used "in a religiously neutral way." *Id.; Board of Educ. v. Grumet,* —— U.S. at ——, 114 S.Ct. at 2494 ("power [cannot be delegated] ... in a manner that fails to foreclose religious favoritism"). The regulation, therefore, has a "principal" or "primary" effect of advancing religion. Moreover, as a " 'fusion of governmental and religious functions' ", *Grendel's Den,* 459 U.S. at 126, 103 S.Ct. at 512 (quoting *Abington School Dist. v. Schempp,* 374 U.S. 203, 222, 83 S.Ct. 1560, 1571, 10 L.Ed.2d 844 (1963)), 27 D.C.M.R. § 302.5 undeniably constitutes an excessive entanglement between church and state.

In fact, to see the religious implications of this regulation, one need look no further than the objection filed in the instant case. It states, in its entirety, that "With respect to the above application, our objection to the granting of the license *is only for religious reasons.*" Stipulation, Exhibit A (emphasis added). Simply stated, the Church cannot be permitted to do through inaction—withholding consent—that which it may not be permitted to do through action—object. *See First Baptist Church v. Arizona State Liquor Bd.,* 149 Ariz. 20, 22, 716 P.2d 81, 83 (Ct.App.1986). As then-Chief Justice Burger commented, "Ordinary human experience and a long line of cases teach that few entanglements could be more offensive to the spirit of the Constitution." *Grendel's Den,* 459 U.S. at 127, 103 S.Ct. at 512.[9]

---

8. Defendants also argue that "the validity of 23 (sic) DCMR 302.5 has been litigated." Defendants' support for this proposition, however, is *Vestry of Grace Parish v. District of Columbia Alcoholic Beverage Control Board,* 366 A.2d 1110, 1113 (D.C.1976), which predates *Grendel's Den* by five years and does not address the Establishment Clause.

9. Because the Court finds that *Grendel's Den* is dispositive, plaintiff's contention with regard to *Larson* need not be addressed. The Court notes, however, that the Supreme Court has indicated, albeit in the context of a prison, that equal accommodations "need not be provided for every faith regardless of size". *Cruz,* 405 U.S. at 322 n. 2, 92 S.Ct. at 1081–82 n. 2. It is also not clear

Finally, despite the constitutional violation, defendants attempt to have this case dismissed by arguing that § 302.5 is severable from the remainder of the regulation. This would result in absolute ban on all liquor licenses within 400 feet of any church regardless of the church's consent, a result which would unquestionably pass constitutional muster. *See Grendel's Den,* 459 U.S. at 124, 103 S.Ct. at 511.

Questions of severability are interpreted under state law. *See Exxon Corp. v. Hunt,* 475 U.S. 355, 376, 106 S.Ct. 1103, 1116, 89 L.Ed.2d 364 (1986).[10] Notwithstanding the District's general severability provision, D.C.Code Ann. § 49–601(a), and the presumption of severability, the regulation cannot be severed for a number of reasons. *See Gary v. United States,* 499 A.2d 815, 822 (D.C.1985), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725 *and* 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986) ("the ultimate determination of severability will rarely turn on the presence or absence of [a severability] clause.") (internal quotes and citation omitted)); *id.* (noting the presumption of severability). First, given the large number of churches in the District and the draconian impact of an outright ban on the economic viability of many businesses, it is impossible to conclude that the District intended to enact an absolute prohibition against liquor outlets within 400 feet of all churches.[11] *See Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 685, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987) (the intent of the legislature is critical to questions of severance); *Gary,* 499 A.2d at 822 ("the issue remains one of 'legislative intent but the presumption is in favor of severability.'") (quoting *Regan v. Time, Inc.,* 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984)). Moreover, because the District included exceptions to the ban in the legislation itself, the Court cannot conclude that an outright ban was the legislative intent. *See*

*Davis v. Wallace,* 257 U.S. 478, 484–85, 42 S.Ct. 164, 166, 66 L.Ed. 325 (1922); *Mills v. United States,* 713 F.2d 1249, 1254 (7th Cir. 1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). Further, because § 302.1 expressly states "Except as otherwise provided in this section", it and § 302.5 are "mutually dependent on one another." *Carter v. Carter Coal Co.,* 298 U.S. 238, 331, 56 S.Ct. 855, 881–82, 80 L.Ed. 1160 (1936). As such, they cannot be severed. *Id.*

### III. *Conclusion*

For the reasons expressed above, 27 D.C.M.R. § 302.5 violates the Establishment Clause of the First Amendment to the United States Constitution. It is, therefore, unenforceable, as are any references to "church" in 27 D.C.M.R. § 302.1. Accordingly, it is hereby

ORDERED that plaintiff's motion for a permanent injunction is granted; it is

FURTHER ORDERED that defendants' motion to dismiss is denied; it is

FURTHER ORDERED that defendants shall process, consider, and act upon Espresso's application for a liquor license without regard to the prohibition in 27 D.C.M.R. § 302 against issuing liquor licenses to establishments located within 400 feet of a nonconsenting church; it is

FURTHER ORDERED that defendants are permanently enjoined from denying any application for a liquor license solely on the ground that a church (or any other religious institution) has objected to, or otherwise withheld consent to, the application; and it is

FURTHER ORDERED that this order is binding on the named defendants; on the officers, agents, servants, employees, and attorneys of the named defendants; and on all persons in active concert or participation

---

that plaintiff has standing to mount this challenge because it is difficult to determine whether plaintiff's injury is "fairly traceable" to this provision of the statute. *See Larson,* 456 U.S. at 239, 102 S.Ct. at 1680 (internal quotation and citation omitted).

**10.** District of Columbia law is considered state law for these purposes. *See District Properties Associates v. District of Columbia,* 743 F.2d 21, 27 (D.C.Cir.1984).

**11.** Inquiries into legislative intent are limited by the absence of legislative history.

with them who receive actual notice of the injunction by personal service or otherwise.

IT IS SO ORDERED.

### *JUDGMENT*

In accordance with the Memorandum Opinion and Order issued this date, judgment is hereby entered in favor of plaintiff, Espresso, Inc., t/a Park Cafe, and against defendants, the District of Columbia and the District of Columbia Alcoholic Beverage Control Board ("Board").

IT IS SO ORDERED.